Robert F. Scoular (SBN 085293)
robert.scoular@snrdenton.com
Andrew Z. Edelstein (SBN 218023)
andrew.edelstein@snrdenton.com
SNR DENTON US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Telephone:  (213) 623-9300
Facsimile:  (213) 623-9924

Charles A. Newman (*Pro Hac Vice*)
charles.newman@snrdenton.com
Michael J. Duvall (*Pro Hac Vice*)
michael.duvall@snrdenton.com
SNR DENTON US LLP
211 North Broadway, Suite 3000
St. Louis, Missouri 63102
Telephone:  (314) 241-1800
Facsimile:  (314) 259-5959

Margo Weinstein (*Pro Hac Vice*)
margo.weinstein@snrdenton.com
SNR DENTON US LLP
233 South Wacker Drive, Suite 7800
Chicago, Illinois 60606
Telephone:  (312) 876-8000
Facsimile:  (312) 876-7934

Attorneys for Defendants
FIRST AMERICAN FINANCIAL CORPORATION and
FIRST AMERICAN TITLE INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENISE P. EDWARDS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FIRST AMERICAN FINANCIAL CORPORATION and FIRST AMERICAN TITLE INSURANCE COMPANY,<br><br>Defendants. | No. CV07-03796 SJO (FFMx)<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DECERTIFY THE TOWER CITY (OHIO) CLASS**<br><br>[Filed concurrently with Notice of Motion and Motion, Declarations, and [Proposed ]Judgment]<br><br>Hearing Date:  May 23, 2011<br>Time:                10:00 a.m. |

SNR DENTON US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

# **TABLE OF CONTENTS**

Page

Introduction ..................................................................................... 1

NEW FACTS REQUIRE DECERTIFICATION ................................... 3

    1.    The New Putative Class ......................................... 3

    2.    Plaintiff's New Testimony ..................................... 3

    3.    Tower City Files ................................................... 4

    4.    Tower City's Lack of Exclusivity ......................... 5

ARGUMENT ...................................................................................... 5

I.     DECERTIFICATION STANDARD ............................................ 5

II.    PLAINTIFF HAS ABANDONED THE TOWER CITY (OHIO) CLASS ................................................................................... 7

III.   ALTERNATIVELY, PLAINTIFF HAS LIMITED THE TOWER CITY (OHIO) CLASS .............................................................. 8

IV.   CERTIFICATION IS INAPPROPRIATE UNDER RULES 23(a)(4) AND (g) ................................................................... 8

    A.    Plaintiff is Inadequate ........................................... 8

    B.    Plaintiff's Counsel are Inadequate ...................... 11

V.    THE CLASS SHOULD BE DECERTIFIED BECAUSE IT IS NOT ASCERTAINABLE, INDIVIDUAL ISSUES PREDOMINATE, AND TRIAL WOULD BE UNMANAGEABLE UNDER RULE 23(b)(3) ...................... 13

    A.    Many Tower City (Ohio) Class Members Cannot Fulfill the RESPA Prerequisite of a "Federally Related Mortgage Loan" ........ 13

    B.    Determining Which Loans are Subject to RESPA Requires an Individualized Review ................................... 17

    C.    Many "Consumers" Did Not Pay for Title Insurance. ...................... 18

VI.   TOWER CITY'S EXCLUSIVITY CLAUSE IS NOT COMMON PROOF OF A "REFERRAL" ............................ 19

VII.  A CLASS ACTION IS NOT SUPERIOR UNDER RULE 23(b)(3) .......... 20

Conclusion ...................................................................................... 20

SNR DENTON US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DECERTIFY THE TOWER CITY (OHIO) CLASS

# **TABLE OF AUTHORITIES**

**Page(s)**

## **Federal Cases**

*Armstrong v. Davis,*
   275 F.3d 849 (9th Cir. 2001) ...................................................................................6

*Atlas Hotels v. United States,*
   140 F.3d 1245 (9th Cir. 1998) ...............................................................................18

*Benefield v. Int'l Paper Co.,*
   2010 WL 4180757 (M.D. Ala. Oct. 20, 2010) ......................................................13

*Bodner v. Oreck Direct, LLC*
   2007 U.S. Dist. LEXIS 30408 (N.D. Cal. Apr. 25, 2007).....................................12

*Brazier v. Sec. Pac. Mortg.,*
   245 F. Supp. 2d 1146 (W.D. Wash. 2003) ............................................................14

*Brotherson v. Prof'l Basketball Club, L.L.C.,*
   604 F. Supp. 2d 1276 (W.D. Wash. 2009) ..............................................................7

*Burdick v. Union Sec. Ins. Co.,*
   2009 U.S. Dist. LEXIS 121768 (C.D. Cal. Dec. 2009)........................................18

*Burkhalter Travel Agency v. MacFarms Int'l, Inc.,*
   141 F.R.D. 144 (N.D. Cal. 1991) ..........................................................................10

*Cardiovascular Care of Sarasota, P.A. v. Cardinal Health, Inc.,*
   2009 WL 928321 (M.D. Fla. Apr. 3, 2009) ..........................................................20

*Carter v. Welles-Bowen Realty, Inc.,*
   2010 U.S. Dist. LEXIS 22476 (N.D. Ohio Mar. 11, 2010)....................................2

*Coopers & Lybrand v. Livesay,*
   437 U.S. 463 (1978) .................................................................................................5

*Daniels v. SCME Mortg. Bankers, Inc.,*
   680 F. Supp. 2d 1126 (C.D. Cal. 2010).................................................................17

*DeBremaecker v. Short,*
   433 F.2d 733 (5th Cir. 1970) .................................................................................13

SNR DENTON US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DECERTIFY THE TOWER CITY (OHIO) CLASS

# TABLE OF AUTHORITIES

(continued)

**Page(s)**

*Dukes v. Wal-Mart Stores, Inc.*,
603 F.3d 571 (9th Cir. 2010), *cert. granted*, 131 S. Ct. 795 (U.S. Dec. 6, 2010) ............................................................................................................ 6

*Empire Title Servs. v. Fifth Third Mortg. Co.*,
No. 10-cv-2208 (N.D. Ohio) ............................................................ 12

*Galindo v. Financo Fin.*,
2008 WL 5170204 (N.D. Cal. Dec. 9, 2008) ................................... 17

*Gen. Tele. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982) ......................................................................... 13

*Hamilton v. Williams*,
2007 WL 2558615 (E.D. Cal. Sept. 4, 2007) ................................... 4

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ........................................................... 9

*Hinchcliffe v. Option One Mortg.*,
2009 WL 1708007 (E.D. Pa. June 16, 2009) ................................... 17

*In re Artha Mgmt.*,
91 F.3d 326 (2d. Cir. 1996) ............................................................... 4

*In re Bituminous Coal Operators' Ass'n*,
949 F.2d 1165 (D.C. Cir. 1991)........................................................ 16

*In re Citric Acid Antitrust Litig.*,
1996 U.S. Dist. LEXIS 16409 (N.D. Cal. Oct. 1, 1996) .................... 9

*In re Flash Memory Antitrust Litig.*,
2011 WL 1301527 (N.D. Cal. Mar. 31, 2011) ................................. 13

*In re Ford Motor Co. Vehicle Paint Litig.*,
182 F.R.D. 214 (E.D. La. 1998) ....................................................... 16

*In re Long*,
2010 WL 2178547 (Bankr. D. Kan. May 26, 2010) ......................... 17

*In re Monster Worldwide, Inc. Secs. Litig.*,
251 F.R.D. 132 (S.D.N.Y. 2008)...................................................... 10

SNR DENTON US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DECERTIFY THE TOWER CITY (OHIO) CLASS

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re Quarterdeck Office Sys. Secs. Litig.*,
　1993 WL 623310 (C.D. Cal. Sept. 30, 1993) ................................................... 10

*Kaynes v. Pac. Lumber Co.*,
　51 F.3d 1449 (9th Cir. 1995) ........................................................................... 12

*LaPorte v. Countrywide Home Loans, Inc.*,
　2009 WL 2905934 (E.D. Tenn. Sept. 3, 2009) ............................................... 17

*Lewis v. Nat'l Football League*,
　146 F.R.D. 5 (D.D.C. 1992) ............................................................................. 12

*Lightfoot v. Dist. of Columbia*,
　246 F.R.D. 326 (D.D.C. 2007) ........................................................................... 6

*Lindsey v. Normet*,
　405 U.S. 56 (1972) ........................................................................................... 14

*Mauro v. Countrywide Home Loans, Inc.*,
　727 F. Supp. 2d 145 (E.D.N.Y. 2010) ............................................................ 14

*Nelson v. Farm Credit Serv. of N.D., PCA*,
　380 F. Supp. 2d 1061 (D.N.D. 2005) .............................................................. 18

*Palumbo v. Tele-Commc'ns*,
　157 F.R.D. 129 (D.D.C. 1994) ......................................................................... 11

*Price v. Cannon Mills*,
　113 F.R.D. 66 (M.D.N.C. 1986) ......................................................................... 7

*Rodriguez v. West Publ'g Corp.*,
　563 F.3d 948 (9th Cir. 2009) ............................................................................. 6

*Sanchez v. Wal-Mart Stores, Inc.*,
　2009 WL 1514435 (E.D. Cal. May 28, 2009) ................................................... 9

*Sanders v. Apple, Inc.*,
　2009 U.S. Dist. LEXIS 6676 (N.D. Cal. Jan. 21, 2009) ................................. 13

*Sherlock v. Herdelin*,
　2008 WL 732146 (E.D. Pa. Mar. 17, 2008) ................................................... 17

SNR DENTON US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DECERTIFY THE TOWER CITY (OHIO) CLASS

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Simon v. Ashworth, Inc.*,
   2007 U.S. Dist. LEXIS 96131 (C.D. Cal. Sept. 28, 2007) .................................. 10

*Slaven v. BP Am., Inc.*,
   190 F.R.D. 649 (C.D. Cal. 2000) .................................................................. 6

*Social Servs. Union, Local 535 v. Santa Clara Cnty*,
   609 F.2d 944 (9th Cir. 1979) ........................................................................ 8

*United Steel, Paper & Forestry, etc. Workers Int'l Union, AFL-CIO, CLC v.*
   *ConocoPhillips Co.*,
   593 F.3d 802 (9th Cir. 2010) ........................................................................ 6

*Welling v. Alexy*,
   155 F.R.D. 654 (N.D. Cal. 1994) .................................................................. 10

*Wiener v. Dannon Co.*,
   255 F.R.D. 658 (C.D. Cal. 2009) .................................................................. 6

*Yumul v. Smart Balance, Inc.*,
   2010 U.S. Dist. LEXIS 116960 (C.D. Cal. Oct. 8, 2010) ................................ 11

## Federal Statutes

12 U.S.C. § 2602(1) .......................................................................................... 14

12 U.S.C. § 2606(a)(1) ...................................................................................... 17

12 U.S.C. § 2607(a) .......................................................................................... 12

12 U.S.C. § 2607(d)(2) ...................................................................................... 18

## Federal Regulations

12 C.F.R. § 226, Supp. I, cmt. 226.3 ................................................................ 17

12 C.F.R. § 226, Supp. I, cmt. 226.3(3)(a) ...................................................... 17

24 C.F.R. § 3500.5(b)(2) .................................................................................. 17

24 C.F.R. § 3500 App. B .................................................................................. 19

SNR DENTON US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DECERTIFY THE TOWER CITY (OHIO) CLASS

# **TABLE OF AUTHORITIES**
(continued)

**Page(s)**

## **Federal Rules**

Fed. R. Civ. P. 23(a) ................................................................................. 1

Fed. R. Civ. P. 23(a)(4)............................................................................ 8

Fed. R. Civ. P. 23(b)(3) .......................................................................... 12

Fed. R. Civ. P. 23(c)(1)(C). ...................................................................... 1

Fed. R. Civ. P. 23(g) ................................................................................ 8

Fed. R. Civ. P. 26(e) ................................................................................ 9

## **Local Rules**

Local Rule 83-3.1.2 ................................................................................ 11

SNR DENTON US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DECERTIFY THE TOWER CITY (OHIO) CLASS

### Introduction

Rule 23(c)(1)(C), Fed. R. Civ. P., requires a court to reassess the propriety of class certification throughout a case.  Since the certification of a class of Ohio persons who purchased title insurance policies issued by Tower City Title Agency LLC ("Tower City") and underwritten by First American Title Insurance Company ("FATIC"), new facts and law have arisen, requiring reassessment of the certification order and decertification of the class.

Plaintiff has abandoned the Tower City (Ohio) class – which had been approved by the Ninth Circuit – by her new motion for nationwide class certification.  Thus, the Ninth Circuit's certification order is without effect, and the propriety of class certification is to be determined anew.

Since certification of the Tower City (Ohio) Class, Plaintiff testified in her bankruptcy proceeding that she has been disengaged from this case for some time and understood that her attorneys had found another plaintiff to pursue this case.  Plaintiff testified that she was no longer acting as the class representative or involved in this case.  Nevertheless, her counsel have claimed that she is the named plaintiff and a putative class representative for a nationwide class and is representing the Tower City (Ohio) class.  Moreover, Plaintiff's sworn testimony in the bankruptcy proceeding reveals that she became involved in this suit through direct, in-person solicitation by counsel, in contradiction to her deposition testimony.  This new evidence establishes her and her counsel's inadequacy under Rule 23(a) and (g).

In addition, FATIC recently obtained Tower City closing files that had been in the possession of Tower City (which was terminated by FATIC and is now out of business) and seized by the FBI (the "Tower City files").  FATIC has reviewed some of those files.  They confirm a myriad of problems with the abandoned Tower City (Ohio) class – problems that Defendants previously identified but have not been addressed by either this Court or the Ninth Circuit (including the inability to ascertain that class, the predominance of individualized issues, and the unmanageability of the

SNR DENTON US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DECERTIFY THE TOWER CITY (OHIO) CLASS

SNR DENTON US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

class).[1]  By example, the Tower City files confirm that a transaction-specific inquiry is necessary to determine whether any class member's loan transaction is subject to the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* ("RESPA"). Decertification is warranted based on the proof from these new files and recent authority denying class certification for this very reason.  *See Carter v. Welles-Bowen Realty, Inc.*, 2010 U.S. Dist. LEXIS 22476 (N.D. Ohio Mar. 11, 2010).

New evidence also confirms that Plaintiff's over-simplistic presumption that Tower City automatically "referred" title insurance underwriting to FATIC because of the parties' "exclusive" agency agreement – *i.e.*, the purported common proof of a referral – is false and does not allow certification.[2]  Rather, this evidence demonstrates that Tower City did not "refer" underwriting to FATIC in every transaction, but also placed underwriting with a FATIC competitor, Old Republic (in addition to Stewart, for which Tower City could issue policies).  Thus, proof of this indispensable RESPA element does not exist for the entire class.

Finally, the Tower City (Ohio) class members' claims are subject to binding, individual arbitration with FATIC, to which they expressly agreed with FATIC, and a superior method of adjudication of their claims.[3]

For these reasons, decertification of the Tower City (Ohio) class is required.

---

[1] On April 21, 2008, Plaintiff moved to certify a class of "consumers who from June 12, 2006 to the present entered into federally related mortgage loan transactions using the services of [Tower City] in which the HUD-1 Settlement Statement, or other document in the loan file, includes a charge or payment for title insurance issued by [FATIC]" (Doc. 99 at 2).  On June 6, 2008, this Court denied the motion (Doc. 126). Plaintiff appealed, and on June 21, 2010, the Ninth Circuit reversed, certifying the Tower City (Ohio) class (Mem. Op. ¶ 3).

[2] Within the meaning of RESPA, Tower City did not "refer" title insurance underwriting to FATIC when issuing its policies; rather, Tower City issued FATIC title insurance *on behalf of* FATIC.  Defendants contemporaneously have filed a motion for judgment on the pleadings on this issue.

[3] Defendants contemporaneously have filed motions to compel arbitration of the Tower City (Ohio) class members' individual claims and for judgment on the pleadings, as well as an opposition to Plaintiff's motion to certify a nationwide class.

## NEW FACTS REQUIRE DECERTIFICATION

### 1.    The New Putative Class

On March 21, 2011, Plaintiff filed a new motion for certification of a nationwide class of "consumers who on or after June 12, 2006 entered into a federally-related mortgage loan transaction using one of . . . 42 title agencies . . . during the time . . . a referral agreement was in effect" (Motion at 2; Doc 234).  Plaintiff listed Tower City as one of the 42 title agencies whose customers are within her putative class (*id.* at 5).[4]

By her motion, Plaintiff no longer seeks to represent and has abandoned the Tower City (Ohio) class (including individuals who purchased a FATIC title insurance policy issued by Tower City from June 12, 2006 to the present and excluding "executives" of Defendants); rather, she only seeks to represent those who purchased a FATIC policy from Tower City until November 9, 2006, when the "exclusivity" clause was removed from Tower City's agency agreement, and omits any exclusions (*see* Mem. in Support at 14 n. 12; Jones Dec. ¶¶ 3 & Ex. B).  Plaintiff's new putative nationwide class subsumes the Tower City (Ohio) class into the unadjudicated definition (Motion at 2 & ¶ 38; Mem. in Support at 14 n. 12).

### 2.    Plaintiff's New Testimony

Plaintiff filed for bankruptcy on October 22, 2010, and testified under oath at the bankruptcy trustee's hearing on November 18, 2010.  *See* No. 10-20438-rb (Bankr. N.D. Ohio) (Doc. 1); Duvall Dec. Exs. F, G ("Bankr. Tr.").  During the hearing, the trustee examined Plaintiff and asked her about her knowledge of this case.  Notably, Plaintiff, with different counsel representing her, revealed (for the first time) that she was solicited in person to bring this suit:

> Q.    Now, what is this lawsuit?  What is this class action on
>
> Item No. 21 of Schedule B?  You probably don't know squat

---

[4] A comparison of Plaintiff's new putative class definition and that certified by the Ninth Circuit – showing the material alterations and omissions by Plaintiff – is provided for reference.  (Duvall Dec. Ex. A.)

SNR DENTON US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

about it because you haven't seen the file before this morning.
Do you know that you're involved in a lawsuit against some title
company?

A.    Yeah.

Q.    What is that?  Do you know?

A.    They came to my house.

Q.    Yeah.

A.    And knocked on my door and said that I've been one of the
citizens that has been wrongfully done to.  Do not have any
knowledge of it.  And if I would like to go over the paperwork,
let them see my deed and all my paperwork and then they'll see
if they have a class action suit.  (Bankr. Tr. at 5-6.)

Plaintiff then testified about her lack of involvement in and disengagement from
this case.  Incredibly, she also testified that, in fact she understood that her former
counsel were pursuing this case with another named plaintiff:

A.    And I did try to proceed with that but it took like a year or
so – but I kept having to leave work a lot.

Q.    It's been a year already?

A.    Yeah.

Q.    Yeah.

A.      And I think maybe they went on with someone else.   I
don't know if they followed through with it theirself . . . .  (*Id.* at 6.)

This testimony certainly raises a question about whether an attorney-client
relationship exists as to this case, at least from the client's perspective.  *See Hamilton
v. Williams*, 2007 WL 2558615, at *10 (E.D. Cal. Sept. 4, 2007) (citing *In re Artha
Mgmt.*, 91 F.3d 326, 328-29 (2d. Cir. 1996) (client must authorize attorney to act)).

### 3.    Tower City Files

FATIC terminated Tower City's agency agreement effective August 9, 2007, but
Tower City retained possession, custody, and control of the vast majority of its closing

SNR DENTON US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

files, including those for closings in 2006.  (Jones Dec. ¶¶ 5-6 & Ex. D.)  In March 2011, FATIC learned from the Ohio Department of Insurance that Tower City had abandoned its closing files, and the Department directed FATIC to secure them.  (*Id.* ¶ 7 & Ex. E.)  In doing so, FATIC learned that the FBI had seized Tower City's files for closings performed during 2006-2007.  (*Id.*)  Pursuant to the Department's request, FATIC retrieved the files from the FBI on April 7 and 8, 2011.[5]  (*Id.*)

FATIC has reviewed some of the Tower City files.  This review, in the context of the mandated Rule 23 calculus, demonstrates that some Tower City (Ohio) class members' loan transactions were not "federally related," the prerequisite of RESPA Section 8, and did not involve loans subject to RESPA at all.  (*See* Duvall Dec. ¶¶ 19-22.)  The Tower City files confirm the Tower City (Ohio) class' Rule 23 shortcomings, which previously were raised by Defendants and now proven true.

### 4. Tower City's Lack of Exclusivity

The Tower City (Ohio) class (as well as the new putative class) definition is premised on the false presumption that every "consumer" was "referred" to FATIC by the "exclusivity" clause (that expired in November 2006) of the Tower City agency agreement.  The testimony of Tower City's former General Counsel establishes that while Plaintiff claims that Tower City was an "exclusive" agent of FATIC, it actually issued a significant percentage of title insurance policies for a competing underwriter, Old Republic.  (Syby Dec. ¶¶ 9, 10.)

## ARGUMENT

## I.   DECERTIFICATION STANDARD

A class certification order is "inherently tentative."  *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 n. 11 (1978).  Under Rule 23(c)(1)(C), a court may review a certification order at any time during the litigation:  "An order that grants or denies class certification may be altered or amended before final judgment."  *See also* Fed. R.

---

[5] On April 11, 2011, FATIC notified Plaintiff of these events and made the files available for inspection and copying.  (Duvall Dec. ¶ 5 & Exs. B, C.)

SNR DENTON US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DECERTIFY THE TOWER CITY (OHIO) CLASS

Civ. P. Advisory Committee Notes (2003) ("decertification may be warranted after further proceedings); Advisory Committee Notes (1996) ("A determination once made can be altered or amended before the decision on the merits if, upon fuller development of the facts, the original determination appears unsound.").

The rule expressly recognizes that "a district court retains the flexibility to address problems with a certified class as they arise, including the ability to decertify. Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation." *United Steel, Paper & Forestry, etc. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802, 809 (9th Cir. 2010) (citation and quotations omitted); *see also Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009). As this Court has noted, if "later evidence disproves Plaintiffs' contentions that common issues predominate, the district court can at that stage modify or decertify the class." *Wiener v. Dannon Co.*, 255 F.R.D. 658, 671 (C.D. Cal. 2009) (Otero, J.) (citations and quotations omitted).

District courts not only have the power to revisit certification, but they "have an affirmative duty to reassess class certification rulings as the case develops, and decertify a class or alter a certification decision." *Lightfoot v. Dist. of Columbia*, 246 F.R.D. 326, 334 n. 6 (D.D.C. 2007) (collecting cases); *see also Armstrong v. Davis*, 275 F.3d 849, 871 n. 28 (9th Cir. 2001) (cited with approval in *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 579 (9th Cir. 2010), *cert. granted*, 131 S. Ct. 795 (U.S. Dec. 6, 2010)); *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 651-52 (C.D. Cal. 2000). A district court has "broad discretion" to revisit certification "throughout the legal proceedings before the court." *Armstrong*, 275 F.3d at 871 n. 28.

Accordingly, this Court must reassess certification of the Tower City (Ohio) class in light of the newly discovered evidence and recently decided authority (*see Carter v. Welles-Bowen Realty, Inc.*, 2010 U.S. Dist. LEXIS 22476, at *7 (N.D. Ohio

SNR DENTON US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1    Mar. 11, 2010) and consistent with the guidance provided by the Ninth Circuit.[6]

2    **II.      PLAINTIFF HAS ABANDONED THE TOWER CITY (OHIO) CLASS**

3          In her motion for nationwide certification, Plaintiff materially changed the class

4    definition that was before the Ninth Circuit (*compare* Doc. 99 at 2 *with* Motion at 2;

5    *see* Duvall Dec. Ex. A).  Notably, she expressly merged the Tower City (Ohio) class

6    into the putative nationwide class, now merely describing Tower City as one of the "42

7    title agencies . . . partially owned by Defendants" whose "consumers" she seeks to

8    represent (*id.*).[7]  By doing so, Plaintiff abandoned certification of the Tower City

9    (Ohio) class.  *See Brotherson v. Prof'l Basketball Club, L.L.C.*, 604 F. Supp. 2d 1276,

10   1296 (W.D. Wash. 2009) ("Plaintiffs' original motions proposed a class and subclass,

11   with different claims for each.  They have now abandoned this proposal in favor of a

12   single class."); *Price v. Cannon Mills*, 113 F.R.D. 66, 72 (M.D.N.C. 1986) (certifying

13   one class but denying "certification of all other classes proposed previously" because

14   "plaintiffs appear to have abandoned [these] previously proposed class claims").

15         Lest there be any doubt, Plaintiff, before filing her motion for nationwide

16   certification, expressed her intent to abandon the Tower City (Ohio) class.  Her

17   statement from the Joint Rule 26(f) Report (Doc. 172 at 11) read:

18              The Ninth Circuit ordered certification of the Tower City class.

19              Plaintiff proposes that this Court should defer notice to that class

20              pending decision on Plaintiff's renewed motion for certification

21              of a national class.  This is based on the fact that <u>if a nationwide</u>

22              <u>class is certified, the Tower City class members will necessarily</u>

23              <u>be part of it</u>.  (Emphasis added).

24         Also, at the status conference on November 8, 2010, Plaintiff requested (and

25   Defendants opposed) that the Court delay ordering notice to that class so that she could

26   _____

27   [6] The Court may "review the propriety of class certification in light of new evidence
     and pretrial litigation, regardless of which judge initially certified the class."  *Lightfoot*,
     246 F.R.D. at 334 n.6.

28   [7] Plaintiff's Tower City (Ohio) and putative nationwide class definitions include

SNR DENTON US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

instead include it in her nationwide class (Duvall Dec. Ex. D ("Tr. of Nov. 8, 2010" at 5)).  Further, in connection with her new motion for certification, Plaintiff submitted no evidence from her prior motion to certify the Tower City (Ohio) class, further evidencing her abandonment.  She should not be permitted to do so in response to this motion.  Decertification is warranted.

## III.  ALTERNATIVELY, PLAINTIFF HAS LIMITED THE TOWER CITY (OHIO) CLASS

Even if Plaintiff claims that she has not abandoned the Tower City (Ohio) class, it is beyond dispute that it is limited to borrowers who purchased FATIC policies from Tower City only between June 12, 2006 and November 9, 2006 and does not exclude from its membership "executives" of Defendants.  (*See* Duvall Dec. Ex. A.)  While the Ninth Circuit's certification order did not specify the end of the class period, the Court's rationale – that Tower City's Ohio Agency Agreement's "exclusivity" clause was common proof of the "action" element of a RESPA referral (Mem. Op. ¶ 3) – necessarily limited the class to the period that the clause was in effect; *i.e.*, until November 9, 2006.[8]  (*See* Jones Dec. ¶¶ 2, 3 & Exs. A, B.)  Plaintiff conceded this point in her motion for nationwide certification, limiting her new putative class to persons who purchased FATIC policies from agents during so-called "exclusivity" periods (Motion at 14 n. 12).  Additionally, she has omitted any exclusions from the new class definition.

## IV.  CERTIFICATION IS INAPPROPRIATE UNDER RULES 23(a)(4) AND (g)

### A.  Plaintiff is Inadequate

This Court initially found that Plaintiff was an adequate class representative, based on her deposition testimony of April 8, 2008 (Doc. 126 at 4).  However, an adequacy finding should be revisited "[i]f at any time . . . it appears that for any reason

"consumers," but that term is not found in RESPA and is meaningless.

[8] The Ninth Circuit did expressly specify that the Tower City class was limited to Ohio purchasers only, as Tower City was never an "exclusive" FATIC agent in other states (Mem. Op. ¶ 3; *see* Jones Dec. ¶ 4 & Ex. C).

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DECERTIFY THE TOWER CITY (OHIO) CLASS

SNR DENTON US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

the [plaintiffs] no longer fairly and adequately protect the interests of the class." *Social Servs. Union, Local 535 v. Santa Clara Cnty*, 609 F.2d 944, 948-49 (9th Cir. 1979); *see also In re Citric Acid Antitrust Litig.*, 1996 U.S. Dist. LEXIS 16409, at *22 (N.D. Cal. Oct. 1, 1996). This is the case here due to Plaintiff's more recent and candid November 18, 2010 testimony, disclosing that she does not fairly and adequately represent the class.[9]

The adequacy calculus must now be recomputed since Plaintiff admits that she is totally disengaged from this case and plays no role – let alone directing her counsel in any respect. Also, she testified that none of her counsel has been in contact or advised her of any developments in this case, and she believes that she is no longer the named plaintiff. Indeed, she testified that she understands that her lawyers found "someone else" to take her place, and she had no idea whether they "followed through" with this case. Bankr. Tr. at 6. Plaintiff's lack of knowledge about even the *existence* of her case and her total lack of involvement are extraordinary and indicate that there is no attorney-client relationship with Ms. Edwards, the sole named Plaintiff. *See Hamilton*, 2007 WL 2558615, at *10.

The compelling conclusions from this evidence cannot be disregarded. This case, being pursued in Plaintiff's name, is proceeding without her knowledge or consent and at her counsel's unfettered discretion.

It is axiomatic that due process requires "a named Plaintiff who understands and controls the major decisions of the case. Class counsel may not act on behalf of an essentially unknowledgeable client, for to proceed with that plaintiff as class representative would risk a denial of due process to the absent class members." *Sanchez v. Wal-Mart Stores, Inc.*, 2009 WL 1514435, at *3 (E.D. Cal., May 28, 2009)

---

[9] Defendants previously served interrogatories asking whether Plaintiff has been a party to any "legal proceeding;" Plaintiff has not supplemented her responses at all – much less to identify her bankruptcy – in spite of her duty to do so. (*See* Duvall Dec. ¶¶ 12-14 & Exs. J, K); Fed. R. Civ. P. 26(e) (duty to supplement interrogatory responses). Nor has she disclosed that she recently was a party to another lawsuit, *Aeon Fin. LLC v. Edwards*, No. CV-09-697531 (Ohio Ct. of Common Pleas,

SNR DENTON US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DECERTIFY THE TOWER CITY (OHIO) CLASS

(citation and quotations omitted); *accord Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Thus, "Courts have held that a class representative who is unfamiliar with the case will not serve the necessary role of check[ing] the otherwise unfettered discretion of counsel in prosecuting the suit." *Welling v. Alexy*, 155 F.R.D. 654, 659 (N.D. Cal. 1994) (finding that a proposed class representative who "appear[ed] to have ceded control to his lawyers" and was "unaware that his lawyers had filed an amended complaint" was "unacceptable") (citations omitted).

This Court has denied certification based on the finding that named plaintiffs would "leave the conduct of the litigation" to their lawyers (*In re Quarterdeck Office Sys. Secs. Litig.*, 1993 WL 623310, at *6 (C.D. Cal. Sept. 30, 1993)), and found inadequate a plaintiff who had "no interest in monitoring the progress of his case" and did "not consider himself to be supervising" it (*Simon v. Ashworth, Inc.*, 2007 U.S. Dist. LEXIS 96131, at *7-9 (C.D. Cal. Sept. 28, 2007)). *See also Burkhalter Travel Agency v. MacFarms Int'l, Inc.*, 141 F.R.D. 144, 154 (N.D. Cal. 1991) (finding that a proposed representative who had "alarming unfamiliarity with the suit" was inadequate); *In re Monster Worldwide, Inc. Secs. Litig.*, 251 F.R.D. 132, 136 (S.D.N.Y. 2008) ("[t]he Court will not be a party to this sham" when the class representative had "no interest in, genuine knowledge of, and/or meaningful involvement in this case and is simply the willing pawn of counsel").

Additionally, Plaintiff's credibility is certainly at issue. Her recent bankruptcy testimony contradicts her prior testimony and discovery responses in this case. For instance, in her bankruptcy petition's Schedule of Property, Plaintiff listed her interest in this case as valueless ("0.00.") (No. 10-20438, Doc. 1 Sch. B No. 21). Yet here, she claims damages of $1,366.29 (*see* Doc. 77 at 4, 9). Plaintiff also has failed to supplement her discovery responses to disclose her bankruptcy or other litigation (*see supra* note 9), further evidencing her total disengagement from this suit.

Importantly (and detailed *infra*), Plaintiff's November 2010 testimony of her

Cuyahoga Cty.) (*see* Duvall Dec. ¶ 10, 11, 14 & Exs. H, I).

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DECERTIFY THE TOWER CITY (OHIO) CLASS

SNR DENTON US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

counsel's direct, in-person solicitation of her to participate in this suit completely contradicts the story she gave during her April 2008 deposition and further evidences her inadequacy and lack of credibility.  Plaintiff's conflicting testimony also weighs against her adequacy.  *See Simon*, 2007 U.S. Dist. LEXIS 96131, at *9-11 (plaintiff inadequate and certification denied due to conflicting testimony).

### B.   Plaintiff's Counsel are Inadequate

Plaintiff testified at deposition that she became involved in this suit after receiving a letter from a law firm of record here.[10]  (Duvall Dec. Ex. 7 ("Edwards Dep.") at 42, 62.)  But she told a dramatically different story while testifying later at her bankruptcy hearing, outside of the presence of counsel in this matter.  She testified to the bankruptcy trustee that her lawyers found her and solicited her to bring this case – one or more of them "knocked on [her] door" and told her that she had a claim that she otherwise did "not have any knowledge of."  (Bankr. Tr. at 5-6.)  She testified that the solicitors would "see if they have a class action suit."  (*Id.* at 6.)

Ohio's ethics rules (Plaintiff and two of her counsel's residence) prohibit a lawyer from soliciting a prospective client by in-person contact if "a significant motive for the lawyer's doing so is the lawyer's pecuniary gain" (unless the prospective client is a lawyer, family member, or close friend, or had a prior professional relationship with the lawyer).[11]  (Ohio Rule Prof'l Conduct 7.3(a).)  Plaintiff testified that she had no relationship with her lawyers prior to this suit.  (Edwards Dep. at 43, 49-50.)

"[C]ounsel's qualifications in the class action context are subject to a 'heightened standard.'"  *Palumbo v. Tele-Commc'ns*, 157 F.R.D. 129, 133 (D.D.C. 1994) (citations omitted).  Plaintiff's bankruptcy testimony proves that she was

---

[10] Plaintiff objected to the production of this letter in response to FATIC's document request for any solicitations concerning this suit.  (Duvall Dec. ¶¶ 15-17 & Exs. L, M.)

[11] Local Rule 83-3.1.2 of this Court requires counsel admitted before the Court to adhere to the California Rules of Professional Conduct.  Those rules, in turn, provide that attorneys must abide by the ethics rules of the jurisdiction in which they are acting.  (Cal. Rules of Prof'l Conduct R. 1-100.)

SNR DENTON US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

improperly solicited to join this suit.  This crucial fact strongly weighs against counsel's adequacy to represent the class.  *See, e.g.*, *Yumul v. Smart Balance, Inc.*, 2010 U.S. Dist. LEXIS 116960, at *20 (C.D. Cal. Oct. 8, 2010) ("In determining whether a class should be certified, the court can properly consider whether proposed class counsel has acted ethically.") (citation omitted).  This case bears a striking similarity to *Bodner v. Oreck Direct, LLC*, in which class counsel went "in search of a plaintiff."  2007 U.S. Dist. LEXIS 30408, at *3, 7 (N.D. Cal. Apr. 25, 2007).  The court held that, since "plaintiff's counsel constructed this lawsuit before it had a plaintiff cannot be denied," "[t]o grant class certification in such circumstances would be to place this court's imprimatur on litigation practices which it finds abhorrent and inconsistent with the standards of federal class action suits."  *Id.* at *6-7.

New evidence reveals that Plaintiff's counsel have other potential conflicts as well.  In September 2010, they filed a putative class action on behalf of settlement agents (including title agents) allegedly blacklisted by Fifth Third Bank.  *See Empire Title Servs. v. Fifth Third Mortg. Co.*, No. 10-cv-2208 (N.D. Ohio) (Doc. 1 ¶ 55).  On information and belief, some of the putative class members in that case are also among the 42 title agencies identified in Plaintiff's motion for nationwide certification.  Thus, Plaintiff's counsel may be taking a position in this case that is materially adverse to members of the putative *Empire Title* class; *i.e.*, that those agencies violated RESPA.  *See* 12 U.S.C. § 2607(a) (holding both the giver and acceptor of a kickback liable).  This potential conflict also weighs against counsel's adequacy.  *See Dukes*, 603 F.3d at 614 (stating that the adequacy factor requires an absence of conflicts of interest); *Hanlon*, 150 F.3d at 1020 (the adequacy inquiry includes whether counsel have a potential conflict of interest); *see also Kaynes v. Pac. Lumber Co.*, 51 F.3d 1449, 1465 (9th Cir. 1995) (class counsel may not have the "appearance of divided loyalties"); *Palumbo*, 157 F.R.D. at 132; *Lewis v. Nat'l Football League*, 146 F.R.D. 5, 10-11 (D.D.C. 1992) (disqualifying class counsel due to a potential conflict).

SNR DENTON US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

**V.    THE CLASS SHOULD BE DECERTIFIED BECAUSE IT IS NOT ASCERTAINABLE, INDIVIDUAL ISSUES PREDOMINATE, AND TRIAL WOULD BE UNMANAGEABLE UNDER RULE 23(b)(3)**

The identity of the class must be ascertainable at the time of certification.  *See, e.g.*, *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970); *In re Flash Memory Antitrust Litig.*, 2011 WL 1301527, at *8 (N.D. Cal. Mar. 31, 2011); *Sanders v. Apple, Inc.*, 2009 U.S. Dist. LEXIS 6676, at *28-30 (N.D. Cal. Jan. 21, 2009).  If a class cannot be identified without resolving disputed evidence on a case-by-case basis, it is not ascertainable.  *E.g., Benefield v. Int'l Paper Co.*, 2010 WL 4180757, at *4 (M.D. Ala. Oct. 20, 2010) (denying certification because "Plaintiffs have asked the court to find facts, based on disputed evidence, to determine who is in the class").

The Tower City files prove that the Tower City (Ohio) class is not ascertainable. The Court should consider the impact of the evidence previously unavailable because, until April 2011, the Tower City files were in the possession of Tower City and the FBI, not FATIC, as FATIC had terminated Tower City's agency status and Tower City had ceased doing business.  (Jones Dec. ¶¶ 5-7 & Ex. D, E.)  Moreover, when Plaintiff initially moved for certification in April 2008 (*see* Doc. 99), she was the only named plaintiff in this case, and there was no need to review the files of others.  *See Gen. Tele. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in light of subsequent developments in the litigation."); *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 651-52 (C.D. Cal. 2000) ("A number of Circuits have held that a District Court must supervise a class to ensure that its continued maintenance satisfies the standards set forth in Rules 23(a) and (b)(3).").  Now that the Tower City files have been obtained and reviewed, a fresh look at the propriety of certification is warranted.  *See supra* at 6-7.  That look reveals that the only way to determine class membership and liability is through a transaction-specific analysis, negating class certification.

**A.    Many Tower City (Ohio) Class Members Cannot Fulfill the RESPA Prerequisite of a "Federally Related Mortgage Loan"**

SNR DENTON US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

RESPA Section 8(a), 12 U.S.C. § 2607(a), applies only if a transaction involves a "federally related mortgage loan," which must:  (1) secure (a) residential, (b) one-to-four family property; and (2) meet one of four additional criteria – (a) be made by a federally regulated or insured lender, (b) be subsidized by a federal agency like HUD, (c) be intended for sale in the secondary mortgage market (*e.g.*, to Fannie Mae or Freddie Mac), or (d) be made by a "creditor" that issued more than $1 million in residential real estate loans per year, § 2602(1).

Unquestionably, Plaintiff and each class member bear the burden of proving that his or her loan is federally related (*see, e.g.*, *Mauro v. Countrywide Home Loans, Inc.*, 727 F. Supp. 2d 145, 154 (E.D.N.Y. 2010)), and Defendants have a due-process right to hold each person to that burden (*see Lindsey v. Normet*, 405 U.S. 56, 66 (1972); *Sanchez*, 2009 WL 1514435, at *4; *e.g.*, *Brazier v. Sec. Pac. Mortg.*, 245 F. Supp. 2d 1146 (W.D. Wash. 2003) (holding that a question of fact existed as to whether a loan was federally related when the evidence indicated that the lender underwrote less than $1 million per year and did not resell loans in the secondary market)).  Defendants previously raised this impediment to certification of both a nationwide and Tower City (Ohio) class (*see* Doc. 51 at 8, 18; Doc. 107 at 12; Answering Br. at 50), but neither this Court nor the Ninth Circuit addressed the issue.  The Court may do so now.  *See, e.g.*, *Armstrong*, 275 F.3d at 871 n.28.

The Tower City files prove the difficulty of determining whether many purported class members' loans were "federally related" and, therefore, whether those individuals could fulfill their burden of proving membership in the class or establishing liability under Section 8(a).  These new facts – coupled with recent authority directly on point and decided since Plaintiff's initial motion to certify the Tower City (Ohio) class – compel re-examination under Rule 23(c)(1)(C).  *See Carter v. Welles-Bowen Realty, Inc.*, 2010 U.S. Dist. LEXIS 22476, at *7 (N.D. Ohio Mar. 11, 2010) (denying class certification because, *inter alia*, the individual determination of a federally related loan), *appeal pending*, No. 10-3922 (6th Cir.)

SNR DENTON US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

SNR DENTON US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Indeed, FATIC's review of the recently discovered Tower City files yielded more individual questions than common answers about the nature of many purported class members' loans, especially as to the lender criteria set forth in RESPA Section 3(1).  In 2006, Tower City's Ohio business centered on the "subprime" lending market, and its customers therefore included many lenders that were not necessarily federally regulated or insured.  (*See* Duvall Dec. ¶¶ 19-22.)  The Tower City files containing FATIC policies involved loans originated by at least 45 lenders apparently neither federally regulated nor insured, according to records of the federal government. (Duvall Dec. ¶¶ 19, 20 & Ex. N.)  Additionally, those lenders' loans did not appear federally subsidized (*e.g.*, they were not FHA or VA loans).  (*Id.* ¶¶ 19, 21 & Ex. N.) And, of course, whether those lenders intended at the time of each class member's closing to sell their loans into the secondary mortgage market (*e.g.*, to Fannie Mae or Freddie Mac) is a question of intent known only to them.  Likewise, whether any lender made or invested in more than $1 million of residential real estate loans per year is a question ultimately within its knowledge.  In short, whether any closing involved loans meeting the lender criteria of Section 3(1) remains a crucial question incapable of resolution from Plaintiff's facts.  Unquestionably, every transaction of every Tower City (Ohio) class member must be investigated and analyzed.[12]

Indeed, a careful review of Plaintiff's own loan transaction illustrates the difficulty of determining whether any loan is federally related.  (*See* Duvall Dec. ¶¶ 25-32 & Exs. P-R.)  Very simply summarized, according to a search of federal government records (as Plaintiff's closing documents did not yield the answer, and Tower City never has the lender's loan file; *see* Syby Dec. ¶ 18), Plaintiff's lender,

---

[12] Plaintiff's prior definition of the Tower City class alluded to the file-by-file review required to ascertain the class and adjudicate its claims, referencing an analysis of documents in the "loan file" (Doc. 99 at 2), which, as the name suggests, would be in the possession of each class member's lender, not any party to this case.  (*See* Syby Dec. ¶ 18.)  Relatedly, both the certified and putative nationwide class definitions include "consumers" who "entered into a . . . loan transaction," which necessarily excludes sellers of real property (who do not enter into loan transactions) like Plaintiff's seller, whom she previously asserted was in the class (*see* Doc. 77 at 11).

Aegis Funding Corp., was not federally chartered or insured.  (Duvall Dec. ¶¶ 24-28 & Exs. P, Q.)  Nothing in Plaintiff's file indicated that her loan was federally subsidized.  (*Id.* ¶¶ 24-29 & Exs. P, Q.)  Of course, whether Aegis intended to sell her loan into the secondary market is a question of intent known only to it.  (*See* Duvall Dec. ¶ 30 & Ex. R.)  And, even if Aegis could qualify as a statutorily defined "creditor" that made or invested in more than $1 million in residential real estate loans in 2006, that information is not in Plaintiff's closing file.  (*See* Duvall Dec. ¶¶ 31, 32 & Exs. P, Q.)

Regardless, the significance goes well beyond whether Plaintiff's loan ultimately was federally related – it is that even if she proves so as to her loan, that proves nothing as to any other Tower City (Ohio) class member's loan.  Thus, the Court can not ascertain who is (or is not) in the class.  Further, proof of a RESPA-covered loan is an indispensable element of proof of liability under Section 8(a), rendering a trial of the Tower City (Ohio) class' RESPA claim unmanageable.  Plaintiff's proof does not and cannot answer this indispensable threshold question for every class member.[13]

Plaintiff will likely and simplistically argue that the "federally related" determination may be made from a simple search of Defendants' or others' records or that the Court should "certify now and worry later."  *In re Ford Motor Co. Vehicle Paint Litig.*, 182 F.R.D. 214, 225 (E.D. La. 1998).  However, neither the remittance system  (WINGS) used by FATIC to track information for title policies issued by Tower City in Ohio in 2006, the real estate databases (Data Tree and Data Trace) used by FATIC to track information for real estate imaging and title plant maintenance, nor the software (Streamline™ ASP) used by Tower City to track closing information during that same period, captured the information necessary to analyze RESPA's

---

[13] Plaintiff likely will cast this issue as one of class membership capable of later resolution by a special master or the like.  By inserting the "federally related" requirement into the class definition, however, Plaintiff merely created an ascertainability problem, which precludes class treatment.  *See, e.g.*, *DeBremaecker*, 433 F.2d at 734; *Benefield*, 2010 WL 4180757, at *4.  Regardless, since the requirement is a prerequisite to Section 8(a) *liability*, it cannot be referred to a special master.  *See In re Bituminous Coal Operators' Ass'n*, 949 F.2d 1165, 1168 (D.C. Cir. 1991) (Ginsburg, J.); *Carter*, 2010 U.S. Dist. LEXIS 22476, at *7.

SNR DENTON US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

lender criteria, such as whether a lender was federally chartered or insured, intended to resell the loan to Fannie Mae, Ginnie Mae or Freddie Mac, or was a statutorily defined "creditor." (Edelstein Dec. Ex. A ¶ 8, Ex. C ¶¶ 3, 10; Fuller Dec. ¶¶ 8-12.) Nor does a Core Logic "Property Detail Report" (which is not a record of Defendants) – or any other Core Logic record – contain these answers, as shown by Plaintiff's own report (*see* PA at 465-66; Edelstein Dec. Ex. B ¶¶ 5, 11; Duvall Dec. ¶¶ 23-32 & Exs. P, Q).

### B.   Determining Which Loans are Subject to RESPA Requires an Individualized Review

RESPA also exempts loans made "primarily for business, commercial, or agricultural purposes." 12 U.S.C. § 2606(a)(1); *e.g.*, *In re Long*, 2010 WL 2178547, at *3 (Bankr. D. Kan. May 26, 2010) (dismissing RESPA claim because the loan was primarily for business purposes); *LaPorte v. Countrywide Home Loans, Inc.*, 2009 WL 2905934, at *2 (E.D. Tenn. Sept. 3, 2009) (same). Business-purpose loans can include loan proceeds used for a home-based business or home office. 12 C.F.R. § 226, Supp. I, cmt. 226.3; 24 C.F.R. § 3500.5(b)(2). Also, loans made to acquire, improve, or maintain rental property may be for a business purpose depending on the application of several factors, including: (1) the number of units; (2) (a) whether the borrower occupies the property (and (b) for how many days per year); (3) the borrower's occupation; (4) the extent of the borrower's management; (5) the borrower's income; and (6) the anticipated rental income. *See* 12 C.F.R. § 226, Supp. I, cmt. 226.3(3)(a). Application of these factors is necessary to determine whether a single-family home was purchased as a primary residence or, by example, for rental.

Like Section 8's "federally related" requirement, each class member must prove the purpose of each loan. *E.g.*, *Daniels v. SCME Mortg. Bankers, Inc.*, 680 F. Supp. 2d 1126, 1129 (C.D. Cal. 2010); *Galindo v. Financo Fin.*, 2008 WL 5170204, at *4 (N.D. Cal. Dec. 9, 2008). Courts repeatedly have recognized the individualized nature of determining whether a loan was made for a "business purpose," as the inquiry focuses on the borrower's ultimate use of the loan proceeds, not the nature of the property or

SNR DENTON US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DECERTIFY THE TOWER CITY (OHIO) CLASS

lender.  *E.g.*, *Hinchcliffe v. Option One Mortg.*, 2009 WL 1708007, at *3 (E.D. Pa. June 16, 2009) (stating that the fact-finder "must look at the entire transaction and determine the borrower's primary motive for seeking the loan"); *Sherlock v. Herdelin*, 2008 WL 732146, at *3 (E.D. Pa. Mar. 17, 2008) (stating that the fact-finder must determine "whether the transaction was made *primarily* for personal, family, or household purposes") (citation and quotations omitted).[14]  Notably, this Court has observed that "'[w]hether an investment loan is for a personal or a business purpose requires a case by case analysis.'"  *Daniels*, 680 F. Supp. 2d at 1129 (quoting *Thorns v. Sundance Props.*, 726 F.2d 1417, 1419 (9th Cir. 1984)).

The review of the Tower City files yielded many files that likely involved loans made for a business purpose; *e.g.*, involve properties that were purchased for rental or resale as an investment.  (Duvall Dec. ¶¶ 18-22 & Exs. N, O.)  But because the ultimate answer to this inquiry is within the unique knowledge of each borrower (*see* Syby Dec. ¶¶ 16, 17), the Tower City (Ohio) class is not ascertainable, individualized issues predominate, and a class-wide trial would be unmanageable.

## C.    Many "Consumers" Did Not Pay for Title Insurance.

RESPA permits an action by persons "charged" for a settlement service (*e.g.*, title insurance), and treble damages are available only to those who "paid" for the service.  12 U.S.C. § 2607(d)(2).  The statute therefore incorporates a fundamental tenet of Article III standing – a person cannot recover three times what she did not pay. *See Atlas Hotels v. United States*, 140 F.3d 1245, 1246 (9th Cir. 1998) (affirming dismissal for lack of standing because the plaintiffs "did not pay the penalties" for which they sought a refund).  Here, the Tower City (Ohio) class, which includes those persons "charge[d]" for title insurance, is impermissibly overbroad because it will include some who did not pay for a FATIC title policy.  *See Sanders*, 2009 U.S. Dist. LEXIS 6676, at *28-30 (holding that a class that included persons who did not pay for

---

[14] *See also Nelson v. Farm Credit Serv. of N.D., PCA*, 380 F. Supp. 2d 1061, 1065 (D.N.D. 2005); *Mauro*, 2010 WL 2976506, at *6.

SNR DENTON US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

product was impermissibly overbroad); *Burdick v. Union Sec. Ins. Co.*, 2009 U.S. Dist. LEXIS 121768, at *10 (C.D. Cal. Dec. 2009) (decertifying class as overboard because it included members who lacked standing).[15]

In Ohio, throughout 2006, "no cost" closings in which lenders, mortgage brokers, builders, or realtors paid or reimbursed borrowers for closing costs, including title insurance, were prevalent.  (Duvall Dec. ¶ 33 & Ex. S.)  Thus, in many Ohio real estate transactions that Tower City closed during the class period, third-party professionals (not "consumers") likely paid for title insurance.  Whether such payments were made is difficult to determine, however, because the HUD-1 would still list a "charge" for title insurance in the borrower's column, while a single offset for third-party payments – including lump-sum payments for many closing costs – would be listed elsewhere.  *See* 24 C.F.R. § 3500 App. A.  Thus, even an examination of a HUD-1 for a title insurance "charge" will not reveal whether the borrower has made the requisite payment.  For these reasons, this question necessitates a file-by-file review of every Tower City (Ohio) class member's file.

## VI.   TOWER CITY'S EXCLUSIVITY CLAUSE IS NOT COMMON PROOF OF A "REFERRAL"

On the record before it, the Ninth Circuit held that the Tower City Ohio agreement's "exclusivity" clause is common proof of the "action" element of a "referral" (Mem. Op. ¶ 3).  In doing so, the Court accepted Plaintiff's unsupported <u>contention</u> that in each Ohio real estate transaction it closed, Tower City issued a FATIC policy pursuant to the alleged "referral agreement" (*see* Doc. 1 ¶¶ 17, 20).

The <u>facts</u>, including new evidence, prove otherwise.  While Plaintiff has claimed without any proof that Tower City issued only FATIC policies during the "exclusivity" period (*e.g.*, Doc. 99 Ex. 8 ¶ 16), Tower City's former General Counsel testifies that, during that period, Tower City issued a significant number of policies for Old

---

[15] Defendants also raised this argument against certification of both a nationwide and the Tower City (Ohio) class (*see* Doc. 51 at 9, 18; Doc. 107 at 14; Answering Br. at 51), but neither this Court nor the Ninth Circuit addressed the issue.

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DECERTIFY THE TOWER CITY (OHIO) CLASS

SNR DENTON US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

SNR DENTON US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1  Republic, a competitor of FATIC, and that Tower City "never" sold only FATIC

2  policies – even during the so-called "exclusivity" period.  (Syby Dec. ¶¶ 9, 10.)

3  Indeed, Tower City advertised that it issued policies for both FATIC and Old Republic

4  during the purported "exclusivity" period.  (*Id.* Ex. C.)

5    Thus, for any transaction during the class period in which Tower City issued

6  FATIC policies, it is contrary to the evidence to assume that the "referral" to FATIC

7  was driven by the "exclusivity" clause of the agency agreement.  It is erroneous to

8  assume that when Tower City issued a FATIC policy, it did so pursuant to any

9  "referral agreement."  Without this common proof of the "action" element of a

10  "referral," Section 8(a) liability cannot be determined on a class-wide basis.

## VII. A CLASS ACTION IS NOT SUPERIOR UNDER RULE 23(b)(3)

12    The Tower City (Ohio) class members' FATIC policies contained arbitration

13  clauses under which FATIC may demand arbitration of any claim arising out of or

14  relating to the policies (including the RESPA claims asserted here).  (Jones Dec. ¶ 8 &

15  Exs. F, G.)  Thus, as arbitration of the Tower City (Ohio) class members' claims is the

16  superior method of adjudication, the class should be decertified.  *See, e.g.,*

17  *Cardiovascular Care of Sarasota, P.A. v. Cardinal Health, Inc.*, 2009 WL 928321, at

18  *7 (M.D. Fla. Apr. 3, 2009) ("This Court also concludes that a class action is not the

19  superior method of adjudicating this dispute.  Notably, the contracts at issue provide

20  for binding arbitration . . . .").

### Conclusion

22    Defendants respectfully request that the Court decertify the Tower City (Ohio)

23  class and grant any other relief that the Court deems just and proper.

24  Dated:  April 25, 2011     Respectfully submitted,

25              SNR DENTON US LLP

26

27            By  s/Robert F. Scoular

28              Robert F. Scoular
            Attorneys for Defendants

-20-