1  Robert F. Scoular (SBN 085293)
   robert.scoular@snrdenton.com
2  Ronald D. Kent (SBN 100717)
   ronald.kent@snrdenton.com
3  Michael J. Duvall (SBN 276994)
   michael.duvall@snrdenton.com
4  SNR DENTON US LLP
   601 South Figueroa Street, Suite 2500
5  Los Angeles, California 90017-5704
   Telephone: (213) 623-9300
6  Facsimile: (213) 623-9924

7  Charles A. Newman (*Pro Hac Vice*)
   charles.newman@snrdenton.com
8  SNR DENTON US LLP
   211 North Broadway, Suite 3000
9  St. Louis, Missouri 63102
   Telephone: (314) 241-1800
10 Facsimile: (314) 259-5959

11 Margo Weinstein (*Pro Hac Vice*)
   MWeinstein@millershakman.com
12 MILLER SHAKMAN & BEEM LLP
   180 N. LaSalle Street, Suite 3600
13 Chicago, Illinois 60601
   Telephone: (312) 263-3700
14 Facsimile: (312) 263-3270

15 Attorneys for Defendants
   FIRST AMERICAN FINANCIAL CORPORATION and
16 FIRST AMERICAN TITLE INSURANCE COMPANY

17

18                    IN THE UNITED STATES DISTRICT COURT

19                       CENTRAL DISTRICT OF CALIFORNIA

20 DENISE P. EDWARDS,                    No. CV07-03796 SJO (FFMx)
   individually and on behalf of all
21 others similarly situated,            DECLARATION OF TODD A. JONES
                                         IN SUPPORT OF MOTION FOR
22           Plaintiffs,                 SUMMARY JUDGMENT

23      vs.                              [Filed concurrently with Notice of
                                         Motion and Motion for Summary
24 FIRST AMERICAN FINANCIAL              Judgment, Statement of Uncontroverted
   CORPORATION and                       Facts and Conclusions of Law,
25 FIRST AMERICAN TITLE                  Memorandum of Points and Authorities
   INSURANCE COMPANY,                    in Support, Declarations of Craig W.
26                                       Syby and Michael J. Duvall, and
           Defendants.                   [Proposed] Judgment]
27
                                         Hearing Date:   March 11, 2013
28                                       Time:           10:00 a.m.

SNR DENTON US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1    I, Todd A. Jones, declare as follows:

2    1.   I make this Declaration in support of Defendants' motion for summary

3    judgment.  I have personal knowledge of the matters set forth in this Declaration.

4    2.   I am the Vice President and State Agency Manager for First American

5    Title Insurance Company ("FATIC") in Ohio.  I have the overall responsibility for

6    FATIC's independent title agents that are authorized to issue FATIC title

7    insurance policies in Ohio.  I have been the Vice President and State Manager in

8    Ohio since 2002.  In that position, I was responsible for FATIC's agency

9    relationship with Tower City Title Agency, LLC ("Tower City"), including during

10   2006.

11   3.   A true and correct copy of the November 1, 1998, Purchase Agreement

12   between FATIC and Tower City, which is a true and accurate copy of a business

13   record maintained by FATIC in the ordinary course of its business and made in the

14   ordinary course of its business at or near the time of the matters described therein,

15   is attached to this Declaration as Exhibit A.

16   4.   A true and correct copy of the November 1, 1998, Agency Agreement

17   between FATIC and Tower City, which is a true and accurate copy of a business

18   record maintained by FATIC in the ordinary course of its business and made in the

19   ordinary course of its business at or near the time of the matters described therein,

20   and was in effect between June 12, 2006, and November 9, 2006, is attached to

21   this Declaration as Exhibit B.

22   5.   A true and correct copy of the owner's title insurance policy issued in

23   connection with Plaintiff's September 29, 2006, real estate transaction is attached

24   to this Declaration as Exhibit C.

25   6.   A true and correct copy of the lender's title insurance policy issued in

26   connection with Plaintiff's September 29, 2006 real estate transaction is attached

27   to this Declaration as Exhibit D.

28

SNR DENTON US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

7.   A true and correct copy of the Privacy Policy used by FATIC in connection with Plaintiff's September 29, 2006 real estate transaction and which would have been used in connection with real estate transactions closed by Tower City between June 12, 2006, and November 9, 2006, is attached to this Declaration as Exhibit E.

8.   Under the November 1, 1998, Agency Agreement, owner's and lender's title insurance policies properly issued by Tower City between June 12, 2006, and November 9, 2006, pursuant to its authority to act on behalf of FATIC, would have been issued by Tower City as an "officer or validating agent" of FATIC using the same policy forms as in Plaintiff's real estate transaction.

9.   Under the November 1, 1998, Agency Agreement, charges for owner's and lender's title insurance policies properly issued by Tower City between June 12, 2006, and November 9, 2006, pursuant to its authority to act on behalf of FATIC, were payable to Tower City, not directly to FATIC.

10.   Borrowers who purchased FATIC title insurance policies issued by Tower City between June 12, 2006, and November 9, 2006, typically dealt directly with Tower City, not FATIC.

I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and correct.  Executed on February 7, 2013.


By  /s/
    Todd A. Jones

SNR DENTON US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

-2-

# EXHIBIT A

## The First American Financial Corporation

FIRST AMERICAN SQUARE · 114 EAST FIFTH STREET, SANTA ANA, CALIFORNIA 92701 · (714) 558-3211

PARKER S. KENNEDY
President

October 23, 1998

Ms. Marilyn Mannarino
President
Tower City Title Agency, Inc.
6151 Wilson Mills Road
Highland Heights, Ohio 44143

Dear Marilyn:

I am pleased we have come to terms regarding the purchase of an interest in your fine company. Accordingly, the following terms and conditions constitute an agreement for the purchase and sale by First American Title Insurance Company ("First American") of a 17.5% interest in Tower City Title Agency LLC, an Ohio limited liability company (the "Company"), from the members of the Company and in the percentages described in the attached Schedule 1. Immediately following the closing, the Company will be owned 17.5% by First American and 82.5% by Tower City Title Agency, Inc. ("Tower City").

The total purchase price for First American's interest in the Company shall be $2,000,000.00 payable at the time of closing in cash and registered Common shares of The First American Financial Corporation (the "Financial Corporation"), allocated as described in the attached Schedule 1.. The number of shares to be transferred will be determined as of the third business day preceding the closing date of this transaction and will be based on the average closing price of the Financial Corporation shares on the New York Stock Exchange ("NYSE") for the five business days preceding such third business date, such that the aggregate value of shares transferred will equal $1,500,000 (the "Acquired Shares").

You acknowledge and agree that the Acquired Shares are being issued pursuant to a registration statement (the "Shelf Registration Statement"), which Shelf Registration Statement provides that you may resell the Acquired Shares pursuant to the Shelf Registration Statement for the one year period following the closing (the "Resale Period"). You further acknowledge and agree that the Financial Corporation is

Exhibit A
Page 4

CONFIDENTIAL

Defs-Edwards_0005113

*The First American Financial Corporation*

Ms. Marilyn Mannarino
October 23, 1998
Page 2

required to maintain the accuracy of the information included in the prospectus that is contained in the Shelf Registration Statement. In this regard, you agree to provide written notice to the Financial Corporation, 114 East Fifth Street, Santa Ana, California 92701, Attention: Secretary, within five business days following each sale or other disposition by you of any First American Common shares owned by you (including the Acquired Shares) during the Resale Period.

The Financial Corporation shares are publicly traded on the NYSE. The Financial Corporation will apply to list the Acquired Shares on the NYSE as soon as possible following the execution and delivery of this agreement. The Acquired Shares will be issued as soon as practicable, upon the date of receipt of the NYSE authorization to list the Acquired Shares on the NYSE (the "Authorization"). All costs associated with the NYSE listing application shall be borne by the Financial Corporation.

First American hereby acknowledges, and you hereby represent and warrant, that the Company was formed on September 23, 1998 and that the assets of the Company are substantially the assets of Tower City, which Tower City contributed in exchange for its membership interest in the Company.

Subject to the satisfaction of the terms, conditions, and contingencies herein, the closing date for this transaction will be November 1, 1998, provided the Authorization has occurred; otherwise, the closing date shall be a date mutually agreeable to the parties on or within 15 days after the date the Authorization has been received by the Financial Corporation.

  1. At the time of closing, the assets and liabilities of the Company must be materially the same as that shown on the balance sheet of Tower City, dated June 30, 1998, attached hereto as Exhibit A, except that the assets of the Company at the time of closing will not include the Florida condominium retained by Tower City. It is, of course, understood that there will be minor changes to the balance sheets due to normal operations of the business.

  2. You, Regina Zaller, and Tower City shall have executed and delivered to First American an Agreement Not to Compete with the Company in the form attached hereto as Exhibit B.

CONFIDENTIAL

Defs-Edwards_0005114

*The First American Financial Corporation*

Ms. Marilyn Mannarino
October 23, 1998
Page 3

3.      The Operating Agreement of the Company shall be amended and restated to read in the form attached hereto as Exhibit C.  At the time of its purchase of an interest in the Company, a duly authorized officer of First American shall execute such Operating Agreement.

4.      First American shall be satisfied that, as of the closing date, First American and Tower City shall be the only members of the Company.

5.      First American shall be satisfied that the representations and warranties of the Company, Tower City, and each shareholder of Tower City set forth below are true and correct in all material respects on and as of the date of closing.

6.      The Company shall have executed and delivered to First American an Agency Agreement with First American in the form attached hereto as Exhibit D.

7.      The Company and its members shall have caused the Company to make an Internal Revenue Code Section 754 election, which election shall be timely filed with federal and/or state taxing authorities.

8.      Tower City shall have executed the Questionnaire in the form attached as Exhibit E.

By signing and returning the enclosed copy of this letter agreement, the Company, Tower City, and each shareholder of Tower City represents and warrants that:

1.      As of the closing date, First American will hold a 17.5% interest as a member of the Company.  The persons listed on the attached Schedule 1 have full right and power, without restriction, to sell to First American their respective interests in the Company; and, further that First American shall own such interests free and clear of all trusts, liens, encumbrances, claims, equities, charges and liabilities of any nature whatsoever, including without limitation any rights or claims any members may have had under any prior operating agreement of the Company; and First American shall obtain title thereto free of adverse claims except as restricted by the Operating Agreement, and shall not be further

CONFIDENTIAL

Defs-Edwards_0005115

*The First American Financial Corporation*

Ms. Marilyn Mannarino
October 23, 1998
Page 4

obligated to extend additional capital or be liable for the debts, liabilities or obligations of the Company except as provided in the Operating Agreement of such entity or as may be imposed by operation of law.

      2.      The Company has only one class, group or series of members and the membership interests to be acquired by First American are of the same class, group or series as the interests of the other members of the Company; all members of the Company are parties to this agreement; each member consents to First American acquiring a membership interest in the Company; and no other consents are required to effectuate the terms of this agreement, including without limitation the issuance of a membership interest in the Company to First American.

      3.      All year end and interim financial statements, previously or subsequently submitted and reviewed by First American, fairly reflect the financial condition of the Tower City or the Company, as the case may be; all books of account and records of Tower City and the Company have been maintained on a cash basis and accurately reflect all items of income and expense of Tower City and the Company appropriate under such accounting method (including the balance sheets attached hereto as Exhibit A); the Company has title to the assets set forth on said books of account, free and clear of liens and encumbrances; and, that, between the date of execution hereof and closing, the Company's business will be conducted in the ordinary course.

      4.      Except as set forth on Schedule 4 attached hereto and incorporated herein by reference, there exists no inquiry, investigation, claim, arbitration hearing, or lawsuit, pending or threatened, involving any matter to which the Company is or may be a party.

      5.      The execution of this agreement and the sale that is the subject hereof do not violate any contract, mortgage, indenture, agreement, or understanding of any kind or character nor do they violate any Articles of Organization, Regulations, operating agreement, or other covenant, accord, trust or indenture.

Exhibit A
Page 7

CONFIDENTIAL

Defs-Edwards_0005116

*The First American Financial Corporation*

Agreed and accepted:

_Marilyn A. Mannarino_     Date: 11/2/98
Marilyn A. Mannarino

_Marilyn A. Mannarino_     Date: 11/2/98
Marilyn A. Mannarino, in her capacity as
Trustee under the Trust Agreement dated March 9, 1995

_Regina A. Zaller_     Date: 11/2/98
Regina A. Zaller, in her capacity as T.O.D. to the
then acting Trustee under the Regina A. Zaller
Declaration of Trust dated June 10, 1993, as modified

_Anita M. Zaller_     Date: 11/2/98
Anita M. Zaller

_Anna G. Campanella POA_     Date: 11/2/98
Anna G. Campanlla  PATRICIA MACINO
By her Attorney in fact

_Marie D. McClintock_     Date: 11/2/98
Marie D. McClintock

TOWER CITY TITLE AGENCY LLC

_Marilyn A. Mannarino_     Date: 11/2/98
Marilyn A. Mannarino, President

TOWER CITY TITLE AGENCY, INC.

_Marilyn A. Mannarino_     Date: 11/2/98
Marilyn A. Mannarino, President

CONFIDENTIAL     Defs-Edwards_0005117

*The First American Financial Corporation*

## Schedule 1

### TOWER CITY TITLE AGENCY LLC ASSIGNEES

| Name | % Interest to be Assigned | Allocable Portion |
|---|---|---|
| 1. Tower City Title Agency, Inc. stock) | 16.5 | $ 1,886,000 (cash and all |
| 2. Marilyn Mannarino | 1.0 | 114,000 (all cash) |
| TOTALS: | 17.5% | $ 2,000,000 |

h:\acquistn\Tower City\letter ag rev

CONFIDENTIAL

Defs-Edwards_0005118

# EXHIBIT B

H:\AGREEMEN\TOWERCTY.AGR
October 13, 1998

## AGENCY AGREEMENT

This Agreement, by and among MIDLAND TITLE SECURITY, INC., an Ohio corporation, whose address is 1360 East 9th Street, IMG Center, Cleveland, Ohio 44114 ("Midland"), and Tower City Title Agency, L.L.C. and Marilyn Mannarino, whose address is 6151 Wilson Mills Road, Highland Heights, Ohio 44143 (each an "Agent"), agree as follows:

1. **Appointment.** Midland, as general agent of and for First American Title Insurance Company of California ("First American"), in the exercise of its authority to appoint agents on behalf of First American with respect to the transaction of the business of title insurance in the state of Ohio, hereby appoints Agent an agent of Midland and/or First American for the transaction of Midland's title insurance business which Agent agrees to promote and perform exclusively for Midland and/or First American in all counties in Ohio. Notwithstanding such exclusivity and as an exception therefrom, Agent shall be permitted to: (i) enter into an agency agreement with Stewart Title Insurance Co., which is substantially identical with the agreement currently with Tower City Title Agency, Inc., so long as Agent does not write policies aggregating premium remittances to Stewart Title which are significantly more than the minimum premium remittances Stewart Title currently requires of its agents to maintain its agency contracts and, (ii) enter into agency agreements with certain other underwriters when a particular customer (or customers) require the use of only that certain other underwriter (or underwriters) as a condition to doing business with such customer (or customers) and First American would not be acceptable to such customer (or customers), provided that the foregoing shall be strictly construed and intended to permit the use of another underwriter only when the alternative would be a direct loss of business to Agent. The "business of title insurance", as used herein, means rendering any or all of the following services to any legal person in consideration of the payment of a fee:

   A.   Receiving and processing applications for title commitments, title guarantees, judicial reports, guaranteed certificates of title, title insurance policies, endorsements, or other forms of title evidence approved by First American (the "Approved Title Evidences");

   B. Examining the chain of title to real estate in connection with the issuance of the Approved Title Evidences; and

   C. Issuing the Approved Title Evidences in accordance with the terms and provisions of this Agency Agreement.

2. **Authority.** Agent may sign, countersign, and issue commitments, title guaranties and insurance policies, endorsements and other forms of title evidence authorized by Midland and/or First American (herein sometimes referred to as "title evidence" or "premium-bearing forms"), on real estate located in the county or counties referred to above, and in such other counties as may be designated by Midland and/or First American.

CONFIDENTIAL                                                         Defs-Edwards_0037163

**3.  Agent's Obligations.**  Agent shall:

A.  Take all reasonable steps to solicit title insurance business and to promote the use of title insurance in the area in which Agent does business.

B.  Receive and process applications for title insurance in accordance with the usual and customary practices and procedures of responsible title insurance agencies in the conduct of their business in a prudent, safe, sound, and ethical manner in accordance with recognized title underwriting principles and the rules, regulations and instructions of Midland and/or First American. The determination of the insurability of any title, subject to the provisions of Section 5., shall be based upon one or more of the following:

(1) A search by Agent of all relevant public records.

(2) An examination of the abstract of title prepared and certified by Agent or by another recognized abstracter whose work is accepted by prudent local title examiners and whose work shows all relevant public records.

(3) An examination of Agent's indices and records supplemented to the extent necessary by an abstract or search of the relevant public records.

(4) Title reports or opinions, on forms furnished or approved by Midland and/or First American, by examiners approved by Midland and/or First American.

C.  Preserve in its possession all supporting documents on which the determination of insurability is made, including, but not limited to, affidavits, lien waivers, searches, and work sheets; and provide Midland and/or First American with access to said documents at any reasonable time or times.

D.  Assume full responsibility for the collection of all premiums due in accordance with the rates established in Paragraph 7 of this Agreement for properties located in the state of Ohio and pay to Midland and/or First American the share of such premium due Midland and/or First American on or before the 15th day of the month succeeding that in which the premium-bearing form was issued. Each payment to Midland and/or First American shall be accompanied by a copy of each premium-bearing form issued during the period covered by the remittance.

E.  Keep a policy register in a form approved by Midland and/or First American in which the Agent shall enter a record of and show the disposition of all

2

CONFIDENTIAL

Defs-Edwards_0037164

policies, endorsements and other contracts under which Midland and/or First American assumes liability for the condition of title. The Agent shall be liable in damages for any loss resulting to Midland and/or First American by reason of the loss or wrongful use of any premium-bearing forms.

F.    Keep safely and segregated in a bank account all monies that may be entrusted to Agent in the course of Agent's operations hereunder, and keep safely any property so entrusted to Agent. Any funds or property deposited with Agent as security for the disposition of or affirmative insurance with respect to a matter that would be included in Schedule "B" of the policy, shall be transferred to Midland and/or First American on or before the 10th day of the month succeeding that in which it was received, together with a copy of the agreement or other documentation pursuant to which the funds or property were received, and such funds or property are to be retained by and under the control of Midland and/or First American in the same manner as similar funds or property held by Midland and/or First American pending disposition pursuant to the agreement under which it was received.

G.    Make available at all reasonable times for examination and audit by Midland and/or First American all accounts, books, ledgers, searches, abstracts and other records of Agent relating to the title insurance business carried on by Agent for Midland and/or First American.

H.    Agent agrees it will maintain all of its accounts and financial transactions in accordance with procedures acceptable by state law, and generally accepted accounting procedures.

I.    Agent agrees it will timely provide a balance sheet and profit and loss statement annually prepared by a certified public accountant but in no event any later than 90 days after the close of the calendar year or fiscal year, as applicable.

J.    Agent shall carry at its own expense title insurance agent's errors and omissions liability insurance in a principal sum not less than $250,000.00 issued by a company or companies acceptable to Midland and/or First American and furnish Midland and/or First American with current premium receipts. Agent shall be liable to pay all amounts, including attorney fees, up to and including the first Twenty-Five Hundred Dollars ($2,500.00) of each loss arising on any one title evidence or premium-bearing form issued by Agent, provided any loss is attributed as a direct result of the negligence or misconduct of the agent or its employees or independent contractors. Liability of Agent for such sum or sums as it may become liable to pay hereunder shall not end upon the termination of this Agreement but shall continue for as long as any title evidence or premium-bearing form issued by Agent remains in force.

3

CONFIDENTIAL

Defs-Edwards_0037165

**4.   No Agency For Escrow or Closing**. It is understood and agreed that Agent is not an agent of Midland and/or First American for the transaction of escrow or closing business and Midland and/or First American expressly deny liability for Agent's conduct of such business.   Agent recognizes, however, that claims for liability resulting from Agent's conduct of such business might nevertheless be asserted against Midland and/or First American and, in an effort to minimize such risk, Agent agrees to adhere in its conduct of any such business to Midland's instructions for the operation of the Midland branch offices engaged in such escrow or closing functions. Agent agrees to keep safely and segregated in separate bank accounts all monies entrusted to it in the course of its escrow or closing business and to make available at all reasonable times for examination and audit by Midland and/or First American all accounts, books, ledgers, files and other records of Agent relating to its escrow or closing business.

Although any escrow business conducted by Agent is not within the scope of this Agreement, Midland and/or First American may from time to time, as an accommodation to Agent in the promotion of Agent's title insurance agency business, issue a "closing protection letter" to a prospective insured or other party to a real estate transaction being processed by Agent, the effect of which is to bind Midland and/or First American to indemnify the addressee thereof against certain losses resulting from Agent's errors, omissions or misconduct in acting as escrow agent for the parties to the transaction, all in accordance with the terms and conditions stated in such letter. In the event Midland and/or First American makes payment of a claim arising out of the conduct of Agent's escrow business (whether or not based on such letter of indemnity) either as a result of entry of judgment against Midland and/or First American or as a result of compromise and settlement, Agent shall promptly reimburse Midland for the full amount of Midland's and/or First American's expenditures, including attorney fees and costs of litigation or settlement negotiations.

Agent agrees that at any reasonable time or times during the terms of this Agreement, it will permit examination by Midland and/or First American of all accounts, books, ledgers, tax returns and other financial and business records relating to the title insurance business conducted by Agent for Midland and/or First American. The parties hereto agree that the manner of operation of any escrow business by Agent is a legitimate concern of Midland and/or First American because of issuance by Midland and/or First American of "closing protection letters" and because of quality of such services performed by Agent bears on the Agent's continuing ability to generate title insurance business on behalf of Midland and/or First American. Agent, therefore, agrees that although the Agent's escrow business is outside the scope of the agency relationship created by this Agreement, Midland and/or First American shall be permitted at any reasonable time or times to examine all financial and business records relating to any escrow business conducted by Agent.

**5.   Prohibitions.**   Agent shall not, without written approval of Midland and/or First American:

A. Incur debts in the name of Midland and/or First American; admit, deny or adjust any claim for loss; or accept service of process on behalf of Midland and/or First American.

4

CONFIDENTIAL

Defs-Edwards_0037166

B.   Commit  Midland  and/or First American  to:  (1) a risk  in  excess  of
$1,000,000.00; (2)  a risk involving a title where Agent has knowledge that a dispute
exists  among lawyers;  (3) a risk where Agent has knowledge of risks, adverse
claims or questions of title known in the community;  (4) any extraordinary risk
as  set  forth  in Midland and/or First American's rules, instructions  or  manuals.  All
such titles, together with the supporting abstracts, certificates of title, chain of title
(if no abstract is furnished) searches,  and  a statement of the special question
involved,  if any,   shall   be submitted  to Midland and/or First American for
consideration before Agent incurs any liability on behalf of Midland and/or First
American.

C.   Commit Midland and/or First American to any interpretation of the
printed terms of any document.

D.   Accept or agree to accept any holdbacks, hold harmless agreements or
indemnity agreements, whether secured or unsecured, as a basis for affirmatively
insuring  over,  or  omitting from a policy, any  title  risk  or exception.

E.  Alter forms furnished by Midland and/or First American.

F.   Accept an application for title insurance for an amount less than the
approximate value of the premises involved in the case of an owner's policy, or  for
less than the amount of the indebtedness in the case of a  lender's policy, or otherwise
vary from the applicable rates established by Midland and/or First American from time
to time.

G.   Accept  service  of legal process on behalf of Midland and/or First
American,  unless required by state law, in which event Agent shall  immediately
forward to Midland and/or First American all documents served.

H.  Request Midland and/or First American to issue its title policy or other
indicia of title insurance provided for herein knowing it, Agent, at that time is in
default or otherwise negligent in the performance of any of its obligations and
agreements contained herein.

6.   **Midland's and/or First American's Obligations.**   Midland and/or  First American
shall:

A. Furnish the Agent with all commitments, policies, endorsements and other
contracts under which First American assumes liability for the condition of title.

B. Determine all questions of risk submitted by the Agent.

5

CONFIDENTIAL

Defs-Edwards_0037167

C.  Provide for reinsurance when necessary.

D.  Appoint Agent in writing as a validating officer to countersign the forms issued to Agent.

**7.  Compensation and Remittance.**  Agent agrees to be responsible for the collection of all premiums for Title evidence issued by Agent in accordance with the then effective schedule of rates as filed with the Ohio Department of Insurance by First American and shall retain eighty-five percent (85%) as its commission on all premiums written.  The balance of said premiums shall be remitted to Midland and/or First American no later than the 15th of the month following the month in which such premiums are written.  All remittances not received by Midland and/or First American within sixty (60) days from the date on which such remittances are due shall automatically accrue interest at a rate equal to two percent (2%) per annum above the Prime Rate of National City Bank, Cleveland, Ohio, in effect from time-to-time, until paid.  Agent shall forward to Midland and/or First American with each monthly report and remittance a copy of each form of Title Evidence referred to therein.  Midland and/or First American retains the right to revise the remittance date and/or schedule rates, whereupon the remittance schedule shall be altered accordingly; provided, however, that no increase in rates shall apply to applications for title insurance or other contracts pending in Agent's office at the effective date of such revision nor shall any revision alter Agent's right to compensation already earned.

If the current annual tax, gross premium tax or State Income Tax rate, as applicable, shall be increased, or should a tax or assessment in addition, substitution or in lieu thereof be imposed on Midland and/or First American, either by constitutional amendment, legislative act or otherwise and should said tax or assessment be higher than the tax as presently paid by Midland and/or First American, the Agent and Midland and/or First American shall, in good faith, renegotiate the percentage of gross premiums paid to First American hereunder.

In the event that the parties cannot, after good faith negotiations, come to any agreement, then Midland and/or First American shall have the option to terminate this Agreement by giving 60 days written notice to Agent in accordance with paragraph 11 (A) (2) following.

**8.  Reinsurance and Coinsurance; Extra Hazardous Risks.**  Midland and/or First American shall have sole discretion as to whether any particular risk shall be reinsured or coinsured by another title insurance company.  If any risk is reinsured or coinsured, Agent's compensation shall be computed on the basis of the net amount remaining after taking into account the cost of such reinsurance or coinsurance year Agent will not be entitled to any portion of any premium paid for reinsurance or coinsurance, or any additional premium charged by Midland and/or First American for insuring an extra hazardous risk.

6

CONFIDENTIAL

Defs-Edwards_0037168

**9.  Indemnity.**  Agent agrees to indemnify Midland and/or First American for all loss, cost or damage which Midland and/or First American may sustain or become liable for on account of:

A.  Willful failure of Agent to comply with the terms of this agreement or with the rules, regulations or instructions given to Agent by Midland and/or First American.

B.  Grossly negligent errors or omissions in Agent's abstracting or examining of title.

C.  Intentional omissions from commitments and/or policies of any printed part of the policy or commitment in reference to encumbrances.

D.  Errors or omissions which are disclosed by the application, the approved examiner's report or which were known to Agent and not disclosed to the insured prior to closing and not shown on the policy.

E.  Any negligence on the part of the agent with respect to escrows or closings or any activity on the part of the agent in violation of the first paragraph of section 4 of this agreement.

F.  Any obligation of Agent with respect to the provisions of Section 3J of this Agreement.

G.  Defalcation, fraud or dishonesty on the part of Agent or any employee, officer, agent or director of Agent.

**10.  Claims.**  If a claim is asserted to Agent, or if Agent is aware of any facts or circumstances which might result in a claim against Midland and/or First American, Agent shall immediately notify Midland and/or First American according to current reporting procedures then in effect and, if required, shall submit a written report, and shall lend all reasonable assistance without charge to Midland and/or First American in investigating or contesting any claim; provided, however, Agent shall not be required to retain counsel or pay attorney's fees in connection with such claim, except as to claims for which Agent is liable under the provisions of Paragraph 9 hereof, and those sums for which Agent is liable under the provisions of paragraph 3(J) hereof.

Midland and/or First American shall proceed with such investigation, negotiation and litigation of any claim of loss as Midland and/or First American shall deem appropriate and shall employ counsel of its choice to render such services as Midland and/or First American shall deem desirable. Midland and/or First American shall keep Agent as fully informed as shall be practicable concerning progress made toward finial settlement. Midland and/or First American shall have a sole right to effect a settlement of any claim of loss.

7

CONFIDENTIAL

Defs-Edwards_0037169

## 11. Termination

A. This Agreement shall be terminated by any of the following:

(1) Mutual agreement by the parties to terminate.

(2) Written notice of cancellation to take effect 60 days after delivery by either Midland and/or First American or Agent to the other provided that so long as either Midland or First American has an interest in Tower City Title Agency, L.L.C., this section 11.A.(2) shall not be applicable.

(3) Immediate termination upon the occurrence of any material breach by either Midland and/or First American or Agent of any of their obligations or undertakings to each other and fails to cure such material breach within forty-five (45) days of receipt of written notice to the defaulting party from the non-defaulting party. Material breach on the part of Agent includes, without limitation: (i) claims or losses, paid or reserved, which exceed fifty percent (50%) of the Agent's remitted premiums during any six (6) month period, and (ii) any material deviation from the rules promulgated by Midland and/or First American and furnished to Agent, or entering into an agency, subagency or similar agreement with another title insurance company or underwriter without prior written consent of Midland and/or First American, other than is permitted under Section 1. of this Agreement.

(4) The filing of a petition in bankruptcy by or against either party hereto or the appointment of a receiver for the property of either party where such appointment is based, in whole or in part, on the allegation of insolvency.

(5) Fraud, cancellation of license or permit to do business, or the instigation of legal proceedings by local, State or Federal authorities, which proceedings, if successful, would lead to cancellation of permit or license to do business, provided, however, that probable cause must exist that any such proceedings will be successful.

(6) Agent becomes more than thirty (30) days delinquent mailing to Midland and/or First American the monthly report and remittance called for by Paragraph 7 preceding.

8

CONFIDENTIAL

Defs-Edwards_0037170

B.   In the event of a shortage of funds entrusted to Agent by Midland and/or First American or others, Midland and/or First American may cancel and terminate this Agreement immediately upon written notice to the Agent, notwithstanding any provisions contained herein to the contrary, and further, Midland and/or First American may declare immediately due any debts or accounts owed by Agent to Midland and/or First American, and Midland and/or First American shall have a lien on all property of the Agent as security for the repayment to Midland and/or First American of any such debts or accounts and any losses or claims Midland and/or First American may be subjected to by reason of the Agent's inability or refusal to account for funds entrusted to Agent; and on demand by Midland and/or First American, Agent shall forthwith make good the shortage.

C.   On termination of this Agreement it shall be the duty of Agent to furnish to Midland and/or First American at once a complete accounting of all unpaid premiums and promptly to return to Midland and/or First American all files relating to premium-bearing forms issued or about to be issued by Agent on behalf of Midland and/or First American, and all unused forms, blanks and supplies furnished by Midland and/or First American to Agent. No termination shall affect Agent's right to compensation on applications received by him prior to the termination.

D.   The respective obligations of the parties relating to liability for losses and defending, appearing in, and paying the costs of litigation shall survive any termination of this Agreement, and in the event of any litigation which might result in the assertion of any claim of loss under any policy issued hereunder, or in the event that Midland and/or First American is informed of any circumstances which might result in a claim of loss under any such policy, Midland and/or First American shall have the right to make an examination of the pertinent books, records and papers of the Agent as it may deem advisable or necessary, whether or not this Agreement has been otherwise terminated, and Agent agrees that the books, records and papers will be kept intact.

12.   **Right of First Refusal.**   In the event that Agent shall desire to sell its title insurance agency business, any part thereof or interest therein, and shall receive a bona fide offer from a third party ("Offeror") offering to purchase the business or any part thereof or interest therein, which offer Agent is willing to accept, Agent shall give Midland and/or First American notice of such offer, which notice shall specify the portion of the business or interest therein sought to be purchased (the "Offered Interest") and the price for which and the terms upon which such offer was made, together with the name of the Offeror. Midland and/or First American shall then have the option, to be exercised by written notice within 30 days after receipt of such notice from Agent (or, if all or any part of the consideration contained in the offer received by Agent shall not be in the form of cash, within 30 days after Agent and Midland and/or First American shall have agreed in writing upon an equivalent cash value) to purchase or find a purchaser for the Offered Interest on the same (or equivalent) terms as contained in Agent's notice. If Midland and/or First American exercises its said option, the Offered Interest shall be sold by Agent to Midland and/or

9

CONFIDENTIAL

Defs-Edwards_0037171

First American or its designee on the terms aforesaid with the closing of such purchase to occur at the time, place and date fixed in the notice of exercise by Midland and/or First American to Agent (which date shall be not less that 30 nor more than 60 days after the date of Midland's and/or First American's notice). If Midland and/or First American shall elect by written notice to Agent not to exercise its said option or shall fail to exercise said option within the time period set forth above, Agent shall be free for a period of 120 days from the date of such notice from Midland and/or First American or the expiration of the option exercise period, as the case may be, to sell the Offered Interest (but not any rights under this agreement without Midland's and/or First American's prior approval in writing) on terms not more favorable than those contained in its notice aforesaid to the Offer or if Agent shall not sell the Offered Interest on such terms within such 120 day period, then Agent shall be required to give Midland and/or First American a right of first refusal in the manner set forth above with respect to any other proposed sale of the business or any part thereof or interest therein.

The provisions of the preceding paragraph shall apply only to a bona fide arms length sale or assignment, and shall have no application to a merger or consolidation of Agent's corporate entity, a sale or transfer of all or any part of Agent's capital stock, a sale or transfer of the business or any part thereof or interest therein by any corporation which controls, or which is controlled by, or which is under common control with, Agent; provided, however, that the provisions of this Agreement shall bind any purchaser, assignee or transferee referred to in this paragraph.

13. **Assignment.** This Agreement may be assigned by Midland and/or First American to any successor of Midland and/or First American, but shall not be assigned by Agent without Midland's and/or First American's prior written consent. Any assignment by Agent without having obtained Midland's and/or First American's prior written consent is void.

14. **Independent Contractor.** Except for purposes of issuing and delivering title evidence, subject to an in accordance with the terms and provisions of this Agreement, Agent is an independent contractor, and shall be in full and complete control of the operation of his title office, including full control of all personnel.

15. **Notices.** Any notice or other communication hereunder shall be in writing and shall be deemed to be delivered on manual delivery thereof, or upon deposit in the United States mails by Certified Mail, addressed to a party at the address hereinabove set forth, or at such other address as a party shall furnish to the other by notice hereunder.

16. Agent understands and agrees not to solicit customers of Midland and/or First American by representing or implying to such customers that they will receive the same service and underwriting from Agent as if they were dealing directly with Midland and/or First American. Midland and/or First American shall give to Agent the same underwriting considerations however as it would give to its own customers in its direct operations. Agent further agrees, in an effort to avoid confusion in the market, not to represent itself as an agent of Midland or a part of the

10

CONFIDENTIAL

Defs-Edwards_0037172

Midland and/or First American organization, but will instead hold itself out as an agent of First American Title Insurance Company.

Midland and/or First American agrees not to use to its competitive advantage knowledge of Agent's customers obtained by or submitted by Agent in requests for underwriting approval on particular transactions.

**17.** This Agreement may be executed in counterparts, each of which shall be deemed an original. Paragraph headings are included for convenience only and are not part of this Agreement.

IN WITNESS WHEREOF, this Agreement is executed as of the _1st_ day of _November_, 1998.

MIDLAND TITLE SECURITY, INC.
FIRST AMERICAN TITLE INSURANCE CO.
("Midland")


By: _____
  James Stipanovich, President, CEO and
  Regional Vice President

TOWER CITY TITLE AGENCY, L.L.C.
("Agent")


By: _____
  Marilyn Mannarino, President


By: _____
  Marilyn Mannarino
  ("Agent" and Individually)

11

CONFIDENTIAL

Defs-Edwards_0037173

# EXHIBIT C

Exhibit C
Page 22



Form OH-1020
ALTA Owner's Policy
Revised 10/17/92

**39-O  388506**

# POLICY OF TITLE INSURANCE



ISSUED BY

## *First American Title Insurance Company*

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, FIRST AMERICAN TITLE INSURANCE COMPANY, a California corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:

1. Title to the estate or interest described in Schedule A being vested other than as stated therein;

2. Any defect in or lien or encumbrance on the title;

3. Unmarketability of the title;

4. Lack of a right of access to and from the land.

The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title, as insured, but only to the extent provided in the Conditions and Stipulations.

*First American Title Insurance Company*

BY _____  PRESIDENT

ATTEST _____  SECRETARY

COUNTERSIGNED

By:_____

Officer or Validating Agent

**INSURANCE FRAUD WARNING** by first American Title Insurance company: Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containg a false or deceptive statement is guilty of insurance fraud.

Exhibit
Page 23  **CONFIDENTIAL**

FATIC/EDWARDS
00188



# First American Title Insurance Company

## SCHEDULE A

| Amount of Insurance: | Date of Policy: | Policy No.: |
|---|---|---|
| **$111,000.00** | **October 2, 2006**<br>or the date of recording of the Vesting Deed<br>whichever is later | **O39-388506** |
| Reference No: **TCT 06-03145** | | |

1. Name of Insured:

   **Denise P. Edwards**

2. The estate or interest in the land which is covered by this Policy is Fee Simple.

3. Title to the estate or interest in the land is vested in:

   **Denise P. Edwards**

4. The land referred to in this Policy is situated in the **City of Cleveland**, County of **Cuyahoga**, State of Ohio, and is described as follows:

   See Attached Legal Description

**CONFIDENTIAL**

INSURANCE FRAUD WARNING:

*Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement, is guilty of insurance fraud.*

Exhibit C
Page 24

FATIC/EDWARDS
00190

Policy No.:  **O39-388506**

## LEGAL DESCRIPTION

Real property in the **City of Cleveland**, County of **Cuyahoga**, State of Ohio, and is described as follows:

Situated in the City of Cleveland, County of Cuyahoga and State of Ohio:

And being known as part of Original Euclid Township Tract No. 15 and is bounded and described as follows: Beginning at the point of intersection of the Westerly line of East 170th Street (formerly Dana Avenue) 50 feet wide, as shown on the dedicated plat thereof, recorded in Volume 39 of Maps, page 9 of Cuyahoga County Records with the Northerly line of Grovewood Avenue N.E., (formerly Olive Street), 60 feet wide, as shown on the dedicated plat thereof, recorded in Volume 27 of Maps, Page 2 of Cuyahoga County Records;

1. thence North 0° 17' 30" East along said Westerly line of East 170[th] Street 290 feet to the principal place of beginning;
2. thence South 89° 52' West and parallel with said Northerly line of Grovewood Avenue N.E., 110 feet;
3. thence  North 0° 17' 30" East and parallel with said Westerly line of East 170th Street 40 feet;
4. thence North 89° 52' East and parallel with said Northerly line of Grovewood Avenue N.E., 110 feet to the Westerly line of said East 170th Street;
5. thence South 0° 17' 30" West along said Westerly line of East 170[th] Street 40 feet to the principal place of beginning and being further known as Sublot No. 339 in A. L. Moses proposed Subdivision of part of Original Euclid Township Tract No. 15, be the same more or less, but subject to all legal highways.

PARCEL NUMBER:  113-22-051

**CONFIDENTIAL**

FATIC/EDWARDS
00191

Exhibit C
Page 25

# FIRST AMERICAN TITLE INSURANCE COMPANY

No. **TCT 06-03145**

## SCHEDULE B – Continued

### SCHEDULE B

ALTA Owner's Policy (10–17–92)
Policy No.:

### EXCEPTIONS FROM COVERAGE

This Policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. Defects, liens, encumbrances, adverse claims or other matters, if any, created, first appearing in the public records or attaching subsequent to the effective date hereof but prior to the date the proposed insured acquires for value of record the estate or interest or mortgage thereon covered by this Policy.

2. Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of said land or by making inquiry of persons in possession thereof.

3. Any encroachments, easements, discrepancies, conflicts in boundary lines, variations of shortages in area or content or any other facts which an accurate survey would disclose.

4. Any lien, or right to a lien, for services, labor or material heretofore or hereafter furnished, imposed by law and not shown by the public records.

5. Rights or claims of parties in possession of all or any part of the premises.

6. Taxes or assessments approved, levied or enacted by the State, County, Municipality, Township or similar taxing authority, but not yet certified to the tax duplicate of the County in which the land is situated, including but not limited to any retroactive increases in taxes or assessments resulting from any retroactive increase in the valuation of the land by the State, County, Municipality, Township, or other taxing authority.

7. Anything to the contrary notwithstanding, this policy will not insure the quantity of land and/or accuracy of dimensions contained within the legal description described in Schedule A.

8. All assessments and taxes due in 2006 and thereafter, not yet payable.

9. Mortgage securing an original principal amount of **$99,900.00**, filed for record **October 2, 2006** in Volume & Page/Instrument Number **200610020852.**
   Mortgagor: **Denise P. Edwards, unmarried**
   Mortgagee: Mortgage Electronic Registration Systems, Inc., as nominee for **Aegis Funding Corporation.**

10. Parcel ID: **113-22-051**
    County: **Cuyahoga**

    **Tax Information:**

| First Half | Year | Amount | Status |
|------------|------|--------|--------|
|            | 2005 | $631.35 | Paid |

**CONFIDENTIAL**

FATIC/EDWARDS
00192

Exhibit C
Page 26

# FIRST AMERICAN TITLE INSURANCE COMPANY

No. TCT 06-03145

## SCHEDULE B – Continued

Second Half

|      |         |      |
|------|---------|------|
| 2005 | $631.35 | Paid |

NOTE: An examination has been made for special assessments not appearing on the current General Tax Duplicate and none have been found.

**CONFIDENTIAL**

FATIC/EDWARDS
00193

Exhibit C
Page 27

# EXHIBIT D

Form OH-101C
ALTA Loan Policy
Revised 10/17/92



39- M 609758

## POLICY OF TITLE INSURANCE

### ISSUED BY

# *First American Title Insurance Company*

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, FIRST AMERICAN TITLE INSURANCE COMPANY, a California corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:

1. Title to the estate or interest described in Schedule A being vested other than as stated therein;
2. Any defect in or lien or encumbrance on the title;
3. Unmarketability of the title;
4. Lack of a right of access to and from the land;
5. The invalidity or unenforceability of the lien of the insured mortage upon the title;
6. The priority of any lien or encumbrance over the lien of the insured mortgage;
7. Lack of priority of the lien of the insured mortgage over any statutory lien for services, labor or material:

   (a) arising from an improvement or work related to the land which is contracted for or commenced prior to Date of Policy; or

   (b) arising from an improvement or work related to the land which is contracted for or commenced subsequent to Date of Policy and which is financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance;

8. Any assessments for street improvements under construction or completed at Date of Policy which now have gained or hereafter may gain priority over the insured mortgage; or
9. The invalidity or unenforceability of any assignment of the insured mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the insured mortgage in the named insured assignee free and clear of all liens.

The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations.

*First American Title Insurance Company*

BY _____ PRESIDENT

ATTEST _____ SECRETARY

COUNTERSIGNED

BY: _____
Officer or Validating Agent

INSURANCE FRAUD WARNING by First American Title Insurance Company: *Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.*

TCT 06-03145

## SCHEDULE A

| Amount of Insurance: | Date of Policy: | Policy No.: |
|---|---|---|
| **$99,900.00** | **October 2, 2006 at 12:24 PM** | **M39-609758** |

1.   Name of Insured:

   **Aegis Funding Corporation**, its successors and/or assigns as their interests may appear

2.   The estate or interest in the land which is encumbered by the Insured mortgage is: *Fee Simple*

3.   Title to the estate or interest in the land is vested in:

   **Denise P. Edwards**

4.   The insured mortgage and the assignments thereof, if any, are described as follows:

   Mortgage from **Denise P. Edwards, unmarried to Aegis Funding Corporation, its successors and/or assigns as their interests may appear** in the amount of **$99,900.00**, recorded **October 2, 2006** in Instrument/Volume, Page**200610020852.**

   The land referred to in this Policy is situated in the **City of Cleveland**, County of **Cuyahoga**, State of Ohio, and is described as follows:

Situated in the City of Cleveland, County of Cuyahoga and State of Ohio:

And being known as part of Original Euclid Township Tract No. 15 and is bounded and described as follows: Beginning at the point of intersection of the Westerly line of East 170th Street (formerly Dana Avenue) 50 feet wide, as shown on the dedicated plat thereof, recorded in Volume 39 of Maps, page 9 of Cuyahoga County Records with the Northerly line of Grovewood Avenue N.E., (formerly Olive Street), 60 feet wide, as shown on the dedicated plat thereof, recorded in Volume 27 of Maps, Page 2 of Cuyahoga County Records;

1.   thence North 0° 17' 30" East along said Westerly line of East 170[th] Street 290 feet to the principal place of beginning;
2.   thence South 89° 52' West and parallel with said Northerly line of Grovewood Avenue N.E., 110 feet;
3.   thence North 0° 17' 30" East and parallel with said Westerly line of East 170th Street 40 feet;
4.   thence North 89° 52' East and parallel with said Northerly line of Grovewood Avenue N.E., 110 feet to the Westerly line of said East 170th Street;
5.   thence South 0° 17' 30" West along said Westerly line of East 170[th] Street 40 feet to the principal place of beginning and being further known as Sublot No. 339 in A. L. Moses proposed Subdivision of part of Original Euclid Township Tract No. 15, be the same more or less, but subject to all legal highways.

PARCEL NUMBER: 113-22-051

**CONFIDENTIAL**

FATIC/EDWARDS
00194

## SCHEDULE B

### EXCEPTIONS FROM COVERAGE

This Policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

### PART I

1. Taxes or assessments approved, levied or enacted by the State, County, Municipality, Township or similar taxing authority, but not yet certified to the tax duplicate of the County in which the land is situated, including but not limited to any retroactive increases in taxes or assessments resulting from any retroactive increase in the valuation of the land by the State, County, Municipality, Township, or other taxing authority.

2. Anything to the contrary notwithstanding, this policy will not insure the quantity of land and/or accuracy of dimensions contained within the legal description described in Schedule A.

3. All assessments and taxes due in 2006 and thereafter, not yet payable.

4. Parcel ID: **113-22-051**
   County: **Cuyahoga**

   **Tax Information:**

| First Half | Year | Amount | Status |
|---|---|---|---|
| | 2005 | $631.35 | Paid |
| Second Half | | | |
| | 2005 | $631.35 | Paid |

NOTE: An examination has been made for special assessments not appearing on the current General Tax Duplicate and none have been found.

### PART II

In addition to the matters set forth in Part I of this Schedule, the title to the estate or interest in the land described or referred to in Schedule A is subject to the following matters, if any be shown, but the Company insures that such matters are subordinate to the lien or charge of the insured mortgage upon said estate or interest.

**CONFIDENTIAL**

FATIC/EDWARDS
00195

FA/OH,KY,WV
FORM 8.1 (5/01)
ENVIRONMENTAL
PROTECTION LIEN



**EB**

ENDORSEMENT

Attached to Policy No. **M39-609758**   **TCT 06-03145**

Issued by

## First American Title Insurance Company

The insurance afforded by this endorsement is only effective if the land is used or is to be used primarily for residential purposes.

The Company insures the insured against loss or damage sustained by reason of lack of priority of the lien of the insured mortgage over:

a)   any environmental protection lien which, at Date of Policy, is recorded in those records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge, or filed in the records of the clerk of the United State District Court for the district in which the land is located, except as set forth in Schedule B; or

b)   any environmental protection lien provided for by any state statute in effect at Date of Policy, except environmental protection liens provided for by the following state statutes:.

This Endorsement is made a part of the policy and is subject to all the terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

### First American Title Insurance Company

BY _____   PRESIDENT

Countersigned:

By _____

Exhibit D
Page 32 **CONFIDENTIAL**

FATIC/EDWARDS
00196

CLTA FORM 116                     Designation of Improvements, Address

## ENDORSEMENT

Attached to Policy No. M39-609758          TCT 06-03145

Issued By

## *First American Title Insurance Company*

The Company hereby insures the owner of the indebtedness secured by the insured mortgage against loss or damage which the insured shall sustain by reason of the failure of (i) a (description of improvement e.g. "a single residence") known as **1136 East 170th Street, Cleveland, OH 44110**, to be located on the land on **October 2, 2006**, or (ii) the map attached to this policy to correctly show the location and dimensions of the land according to the public records.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

Date: **10/2/2006**

**First American Title Insurance Company**

By: _____
Authorized Signatory

CLTA Form 116 (Rev. 6-14-96)
ALTA – Lender

DESIGNATION OF IMPROVEMENTS, ADDRESS

**CONFIDENTIAL**

FATIC/EDWARDS
00197

American Land Title Association

Endorsement 9 (Restrictions, Encroachments, Minerals)
Revised 10/17/98
Section IV-14

## ENDORSEMENT

Attached to Policy No. M39-609758      TCT 06-03145

Issued by

### *First American Title Insurance Company*

The Company insures the owner of the indebtedness secured by the insured mortgage against loss or damage sustained by reason of:

1.      The existence, at Date of Policy, of any of the following:

    (a)      Covenants, conditions or restrictions under which the lien of the mortgage referred to in Schedule A can be divested, subordinated or extinguished, or its validity, priority or enforceability impaired.

    (b)      Unless expressly excepted in Schedule B:

        (1)      Present violations on the land of any enforceable covenants, conditions or restrictions, and any existing improvements on the land which violate any building setback lines shown on a plat of subdivision recorded or filed in the public records.

        (2)      Any instrument referred to in Schedule B as containing covenants, conditions or restrictions on the land which, in addition, (i) establishes an easement on the land; (ii) provides a lien for liquidated damages; (iii) provides for a private charge or assessment; (vi) provides for an option to purchase, a right of first refusal or the prior approval of a future purchaser or occupant.

        (3)      Any encroachment of existing improvements located on the land onto adjoining land, or any encroachment onto the land of existing improvements located on adjoining land.

        (4)      Any encroachment of existing improvements located on the land onto that portion of the land subject to any easement excepted in Schedule B.

        (5)      Any notices of violation of covenants, conditions and restrictions relating to environmental protection recorded or filed in the public records.

2.      Any future violation on the land of any existing covenants, conditions or restrictions occurring prior to the acquisition of title to the estate or interest in the land by the insured, provided the violation results in:

    (a)      invalidity, loss of priority, or unenforceability of the lien of the insured mortgage; or

    (b)      loss of title to the estate or interest in the land if the insured shall acquire title in satisfaction of the indebtedness secured by the insured mortgage.

3.      Damage to existing improvements, including lawns, shrubbery or trees:

    (a)      which are located on or encroach upon that portion of the land subject to any easement excepted in Schedule B, which damage results from the exercise of the right to maintain the easement for the purpose for which is was granted or reserved;

    (b)      resulting from the future exercise of any right to use the surface of the land for the extraction of development of minerals excepted from the description of the land or excepted in Schedule B.

**CONFIDENTIAL**

FATIC/EDWARDS
00198

American Land Title Association                    Endorsement 9 (Restrictions, Encroachments, Minerals)
                                                                           Revised 10/17/98
                                                                           Section IV-14

4.    Any final court order or judgment requiring the removal from any land adjoining the land of any encroachment excepted in Schedule B.

5.    Any final court order or judgment denying the right to maintain any existing improvement on the land because of any violation of covenants, conditions or restrictions or building setback lines shown on a plat of subdivision recorded or filed in the public records.

    Wherever in this endorsement the words "covenants, conditions or restrictions" appear, they shall not be deemed to refer to or include the terms, covenants, conditions or limitations contained in an instrument creating a lease.

    As used in paragraphs 1(b)(1) and 5, the words "covenants, conditions and restrictions: shall not be deemed to refer to or include any covenants, conditions or restrictions relating to environmental protection.

    This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto.  Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and of any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

*First American Title Insurance Company*

BY _____                          PRESIDENT

Countersigned:

By _____

**CONFIDENTIAL**

FATIC/EDWARDS
00199

# FIRST AMERICAN TITLE INSURANCE COMPANY

**OTIRB ENDORSEMENT**
**FORM OH-21**
**SURVEY EXCEPTION —LOAN POLICY**

**Attached to and made a part of** *First American Title Insurance Company* **Policy No. M 39 609758        TCT 06-03145**

The Company eliminates from its Loan Policy the exceptions reading as follows:

. Encroachments, overlaps, boundary line disputes and any other matters which would be disclosed by an accurate survey and inspection of the premises;

. Easements or claims of easements not shown by the public records,

The Company further insures, unless expressly excepted in Schedule B, against loss by reason of any encroachment of existing improvements, other than party walls, located on the land onto adjoining land, or any encroachments onto the land of existing improvements, other than party walls, located on adjoining land.

The total liability of the Company under said Policy and any encroachments thereon shall not exceed, in the aggregate, the face amount of said Policy and costs which the Company is obligated, under the Conditions and Stipulations thereof, to pay.

This endorsement is made a part of said Policy and is subject to the Schedules, Conditions and Stipulations therein, except as modified by the provisions thereof.

Nothing herein contained shall be construed as extending or changing the effective date of said Policy, unless otherwise expressly stated.

**FIRST AMERICAN TITLE INSURANCE COMPANY**

_____
Authorized Signatory

OHIO TITLE INSURANCE RATING BUREAU ENDORSEMENT OH-21
LOAN POLICY ONLY

**CONFIDENTIAL**

FATIC/EDWARDS
00200



**Privacy Policy**

### We Are Committed to Safeguarding Customer Information

In order to better serve your needs now and in the future, we may ask you to provide us with certain information. We understand that you may be concerned about what we will do with such information - particularly any personal or financial information. We agree that you have a right to know how we will utilize the personal information you provide to us. Therefore, together with our parent company, The First American Corporation, we have adopted this Privacy Policy to govern the use and handling of your personal information.

### Applicability

This Privacy Policy governs our use of the information which you provide to us. It does not govern the manner in which we may use information we have obtained from any other source, such as information obtained from a public record or from another person or entity. First American has also adopted broader guidelines that govern our use of personal information regardless of its source. First American calls these guidelines its *Fair Information Values*, a copy of which can be found on our website at www.firstam.com.

### Types of Information

Depending upon which of our services you are utilizing, the types of nonpublic personal information that we may collect include:

- information we received from you on applications, forms and in other communications to us, whether in writing, in person, by telephone or any other means;
- information about your transactions with us, our affiliated companies, or others; and
- information we receive from a consumer reporting agency.

### Use of Information

We request information from you for our own legitimate business purposes and not for the benefit of any nonaffiliated party. Therefore, we will not release your information to nonaffiliated parties except: (1) as necessary for us to provide the product or service you have requested of us; or (2) as permitted by law. We may, however, store such information indefinitely, including the period after which any customer relationship has ceased. Such information may be used for any internal purpose, such as quality control efforts or customer analysis. We may also provide all of the types of nonpublic personal information listed above to one or more of our affiliated companies. Such affiliated companies include financial service providers, such as title insurers, property and casualty insurers, and trust and investment advisory companies, or companies involved in real estate services, such as appraisal companies, home warranty companies, and escrow companies. Furthermore, we may also provide all the information we collect, as described above, to companies that perform marketing services on our behalf, on behalf of our affiliated companies, or to other financial institutions with whom we or our affiliated companies have joint marketing agreements.

### Former Customers

Even if you are no longer our customer, our Privacy Policy will continue to apply to you.

### Confidentiality and Security

We will use our best efforts to ensure that no unauthorized parties have access to any of your information. We restrict access to nonpublic personal information about you to those individuals and entities who need to know that information to provide products or services to you. We will use our best efforts to train and oversee our employees and agents to ensure that your information will be handled responsibly and in accordance with this Privacy Policy and First American's *Fair Information Values*. We currently maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.

D.P.E

© 2001 The First American Corporation. All rights reserved.