SPERTUS, LANDES & UMHOFER, LLP
James W. Spertus (SBN 159825)
1990 S. Bundy Dr., Suite 705
Los Angeles, California 90025
Telephone: (310) 826-4700
Facsimile: (310) 826-4711
jim@spertuslaw.com
ezra@spertuslaw.com

ZUCKERMAN SPAEDER LLP
Cyril V. Smith (*Pro Hac Vice*)
100 East Pratt Street, Suite 2440
Baltimore, Maryland 21202
Telephone (410) 949-1145
Facsimile: (410) 659-0436
csmith@zuckerman.com

[Additional counsel listed on signature page]

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENISE P. EDWARDS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs<br><br>v.<br><br>THE FIRST AMERICAN CORPORATION and FIRST AMERICAN TITLE INSURANCE COMPANY,<br><br>Defendants. | CASE NO. CV07-03796 SJO (FFMX)<br><br>Hon. Frederick F. Mumm<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS'** ***EX PARTE*** **APPLICATION TO QUASH DEPOSITION SUBPOENA**<br><br>**DISC. CUTOFF: 03/08/2013**<br><br>[Declaration of Robert T. Shaffer and proposed Order filed concurrently herewith] |

## INTRODUCTION

Defendants' *Ex Parte* Application to quash the deposition subpoena issued to Marilyn Mannarino illustrates the extraordinary lengths to which the Defendants are

prepared to go to prevent Plaintiff from deposing Ms. Mannarino at the Federal Bureau of Prisons ("BOP") in Alderson, West Virginia, where she is presently incarcerated. Frustrated by Ms. Mannarino's agreement to testify at deposition, Defendants' counsel has sought to "lobby" Ms. Mannarino's daughter, Susan, and has gone so far as to submit unsigned declarations as proof of supposed conversations between Susan Mannarino and Plaintiffs' counsel. The basis for the Application – that Marilyn Mannarino's consent to be deposed in this case was coerced by Plaintiff's counsel – relies upon multiple layers of hearsay statements reportedly made by Susan Mannarino to Defendants' counsel and by Marilyn Mannarino to Defendants' counsel, which have been refuted in all material respects by the Declaration of Plaintiff's counsel, Robert T. Shaffer, submitted with this Opposition. Significantly, the principal "source" of Defendants' claim that Marilyn Mannarino was coerced, Marilyn Mannarino's adult daughter, Susan, has refused to come forward to validate the statements attributed to her by Defendants' counsel.[1] Moreover, the person whom Defendants claim was coerced, Marilyn Mannarino, has also declined to submit a Declaration and, based upon a fair reading of the hearsay statements attributed to her in Mr. Duvall's Declaration, she was <u>not</u> coerced.

As explained below, even assuming the truth of the statements reportedly made by Susan Mannarino, as recounted in the Declaration of Defendants' counsel,

---

[1] Defendants filed Declarations of Susan Mannarino and Patti Marino (Exhibits "G" and "H," respectively, to the Declaration of Michael J. Duvall) with the symbol "/s/" above the signature lines, which ordinarily implies that the witnesses had signed or authorized their electronic signature to be affixed to the document. In fact, both witnesses have declined to sign the Declarations prepared by Defendants' counsel. *See* Duvall Dec., ¶¶ 11-12. Since neither witness has consented to the terms and conditions for electronic filing under the ECF system, the "/s/" signatures on their declarations have no legal effect.

2.

*PLAINTIFF'S OPPOSITION TO EX PARTE APPLICATION TO QUASH*

there is no credible basis to believe that Ms. Mannarino's consent to give a deposition was anything other than voluntary. Indeed, regardless of what Susan Mannarino may have told Mr. Duvall about her conversation with Plaintiff's counsel (the majority of which has been refuted by Mr. Shaffer's Declaration), the double hearsay statements attributed to Marilyn Mannarino in Mr. Duvall's Declaration confirm that Ms. Mannarino gave her consent voluntarily after considering her options. She freely chose to be deposed to avoid a less convenient alternative; *i.e.*, the possibility of being required to appear and testify in person at trial in Los Angeles.

## BACKGROUND

As the Court knows, Plaintiff has been pursuing the deposition of several key witnesses, including Marilyn Mannarino, for months. At virtually every turn, Defendants have resisted this effort. The dispute over Ms. Mannarino's deposition arose when Defendants' counsel wrote a letter to the Bureau of Prisons ("BOP") confirming counsel's "understanding" that Ms. Mannarino had refused in writing to consent to a deposition. Defendants hoped that this would be the end of the matter. It was not. On February 7, 2013, Plaintiff filed an Ex Parte Application for Leave to Depose Ms. Mannarino (Doc. # 416). Defendants' sole basis for opposing the Application was Ms. Mannarino's asserted refusal to consent to her deposition.

The Court resolved the parties' dispute by granting Plaintiff leave to depose Ms. Mannarino. *See* Order dated February 14, 2013 (Doc. # 429). During a February 14 telephone conference with counsel, the Court agreed that Ms. Mannarino's apparent lack of consent was not a proper basis to deny Plaintiff's Application for leave to depose her, as required by Rule 30. Nor could it be interposed to prevent Plaintiff from serving her with a deposition subpoena or enforcing the subpoena in the event the witness refused to comply with it. Nevertheless, solely to avoid *possible inconvenience to the parties* if Ms. Mannarino

3.

ultimately chose to disobey the Subpoena, the Court instructed Plaintiff's counsel to proceed to serve Ms. Mannarino with a deposition Subpoena, and once the Subpoena had been served, to ascertain in advance of the March 6 deposition whether she would comply with the Subpoena or continue to withhold her consent. The Court requested that counsel attempt to agree on an acknowledgment form that Ms. Mannarino could sign indicating whether she would or would not consent to be deposed.

This somewhat unusual procedure was based upon the reality that if a prisoner refuses to comply with a subpoena, the deposition cannot go forward because the BOP's rules and regulations do not permit prisoners to be forced against their will to attend depositions. At the February 14 hearing, this Court indicated that Ms. Mannarino's consent was required before the deposition could proceed. But the Court did not hold, or even suggest, that Ms. Mannarino's mere refusal to consent would vitiate the effect of the Subpoena.

On February 15, 2014, Plaintiff's counsel prepared and circulated to Defendants' counsel a form acknowledgment for Ms. Mannarino. *See* Duvall Dec., Ex. B & C. On February 20, Defendants proposed a different acknowledgment form. *See* Duvall Dec., Ex. D & E. Defendants' form gave Ms. Mannarino one option – to refuse to consent.[2] In their Application, Defendants state that the form prepared by Plaintiff's counsel was inconsistent with the "Court's prescribed language" without explaining how it was inconsistent. *See* Defs. App. at 3. Although the Court did provide the parties some guidance on what the form might

---

[2] This has been Defendants' *modus operandi* all along: to convey to Ms. Mannarino the false impression that all she has to do is withhold her consent and she will automatically be spared the inconvenience of giving essential testimony in this matter that could assist Plaintiff in the prosecution of her case.

4.

*PLAINTIFF'S OPPOSITION TO EX PARTE APPLICATION TO QUASH*

or might not say, the Court expressly declined to prescribe any such language to be used in the form. Instead, the Court advised "the parties to work out the precise language of the form." Duvall Dec., Ex. A (Hearing Transcript dated February 14, 2013), at 20. Defendants fail to mention in their Application that Ms. Mannarino was presented with and signed *Defendants'* acknowledgment form.

On February 27, 2013, two days after Ms. Mannarino was served with a Subpoena issued from the United States District Court for the Southern Division of West Virginia, a private process server hired by Plaintiff traveled to the Alderson prison where Ms. Mannarino is currently confined and presented her with the form prepared *by Defendants' counsel*. The form presented to Ms. Mannarino, as prepared by Defendants' counsel, reads as follows:

> Having been served with a subpoena that requires my deposition on March 6, 2013, I nonetheless refuse to consent to give my deposition.
>
> _____
> Marilyn Mannarino
> Date: _____

Ms. Mannarino crossed out the word "refuse," signed the form, initialed the change, and returned it to the process server. *See* Return of Service and signed acknowledgment form filed on February 27, 2013 (Doc. #439).

## ARGUMENT

**A. Ms. Mannarino Was Not Coerced to Sign Defendants' Form**

Defendants' claim that Ms. Mannarino was somehow coerced to give her consent to a deposition is baseless. *First*, Defendant's alleged "evidence" of coercion – statements attributed to Plaintiff's counsel by Susan Mannarino – are contained in a draft Declaration prepared by Defendants' counsel that Ms. Mannarino refused to sign. Susan Mannarino is the same reluctant declarant who for over a month repeatedly lied to Plaintiff's counsel about her mother's

5.

*PLAINTIFF'S OPPOSITION TO EX PARTE APPLICATION TO QUASH*

whereabouts in order to spare her mother the inconvenience of submitting to a deposition.  *See* Shaffer Dec.,  ¶ 5.

*Second*, as Susan Mannarino made clear in her February 28, 2013 e-mail to Defendants' counsel, she declined to sign a Declaration because her mother "wants it [the deposition] over with" and Susan wishes to "abide by her [mother's] wishes." Duvall Dec., Ex. I.  Aside from a brief reference to her mother's preference to be deposed in prison (rather than required to testify at trial in California), Ms. Mannarino's e-mail makes no mention of actual threats, coercion, chains, shackles, or long bus rides to California.  Such rhetorical flourishes appear *only* in the Declaration prepared by Defendants' counsel, which Susan Mannarino has declined to execute or endorse.

*Third*, most of the statements relied upon by Defendants, particularly the more sensational ones, have been refuted by the sworn Declaration of Plaintiff's counsel, in which Plaintiff's counsel denies that he ever coerced or threatened or mislead Ms. Mannarino by statements made to her daughter, Susan.  *See* Declaration of Robert T. Shaffer, ¶¶ 6-7.  Contrary to unsubstantiated claims made in Defendants' Application, Mr. Shaffer did <u>not</u> advise Susan Mannarino that if her mother did not give a deposition, "that would not go over well with her warden;" or that her mother would be "brought in chains" on a bus from West Virginia to California, "making five stops along the way." *Compare* Defs. App. at 3, 6; [Draft] Declaration of Susan Mannarino ¶ 4, *with* Shaffer Dec. at ¶ 6.  Although Mr. Shaffer never threatened anyone, he did advise Susan Mannarino that Plaintiff intended to subpoena her mother for deposition (which was true), and that if her mother continued to refuse to be deposed, Plaintiffs would reserve their right to have Ms. Mannarino subpoenaed to appear for trial in California (which is also true).  *See* section B, *infra*.  Mr. Shaffer also advised Susan that it would be far easier for her

SPERTUS, LANDES & UMHOFER, LLP
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL (310) 826-4700 • FAX (310) 826-4711

6.

*PLAINTIFF'S OPPOSITION TO EX PARTE APPLICATION TO QUASH*

mother to be deposed in prison than to appear and testify at trial in California (which is also true).

Finally, the statements made by Marilyn Mannarino to Defendants' counsel, far from suggesting coercion, prove the exact opposite. According to Mr. Duvall's Declaration, Marilyn Mannarino told him "that she understood that she had 'three options': (1) to voluntarily give her deposition; (2) to be compelled by subpoena to give her deposition; or (3) to be forced to testify at trial in California." Duvall Dec. at ¶13. Ms. Mannarino chose option # 1 – "to *voluntarily* give a deposition." (Emphasis added.) Whether Defendants are willing to admit it or not, these were (and still are) Ms. Mannarino's only options.

No one has suggested that Ms. Mannarino is not competent to make her own decisions. She is a sophisticated business woman who committed a complex fraud against the federal government. Federal inmates enjoy no greater rights than private citizens. They, too, must abide by validly-issued subpoenas. There is no credible evidence to suggest that Ms. Mannarino's decision to be deposed was anything other than voluntary, based upon a full and accurate understanding of the choices available to her, and made in consultation with her family members who prefer to defer to her final judgment on the matter.

### B. The Court's Power To Issue A Writ of *Ad Testificandum*

Defendants have requested that the Court quash the Subpoena, or at least afford Ms. Mannarino a *second* opportunity to withhold her consent based upon what Defendants refer to as "full knowledge of the relevant circumstances." Defs. App. at 7. This request appears to be based in part on Defendants' contention that this Court lacks authority to require inmates to appear and testify as witnesses at trial, and that Ms. Mannarino was somehow misled into believing that she could be compelled to testify at trial if she refused to abide by a validly-issued deposition subpoena. *Id*. at 6. Defendants are incorrect.

As noted in Plaintiff's *Ex Parte* Application for Leave to Depose Marilyn Mannarino, Plaintiff reserved her right to procure Ms. Mannarino's appearance at trial through issuance of a common law writ of habeas corpus *ad testificandum*, which is now codified in 28 U.S.C. §2241(c)(5). *See* Plaintiff's App. (Doc. # 416), n. 3. Furthermore, as demonstrated below, this Court clearly has the authority to require Ms. Mannarino to appear at trial under §2241(c)(5), which authorizes district courts to issue wits of habeas corpus, including to prisoners if "[i]t is necessary to bring him into court to testify or for trial."

Defendants cite Fed. R. Civ. P. 45(c)(3)(A)(ii) and two federal district court opinions from forty years ago in support of their claim that this Court lacks the power to order that a prisoner held outside its territorial jurisdiction appear before it to testify in a civil action, regardless of the importance of his or her testimony in that action. Defs. App. at 6-7 (citing, *inter alia*, *Clark v. Hendrix*, 397 F. Supp. 966, 974 (N.D. Ga. 1975); *Silver v. Dunbar*, 264 F. Supp. 177, 179 (S.D. Cal. 1967)).[3] This is not the law.

*First*, Fed. R. Civ. P. 45(c)(3)(A)(ii), a mere rule of procedure, does not take precedence over federal statutes that provide for nationwide service of process. The plain text of §2241(c)(5), and the numerous case interpreting it, demonstrate that that federal district courts have power to issue writs to federal or state officials for the purpose of securing the appearance of a prisoner to testify. None of the cases

---

[3] A third case cited by defendants, *Holt v. Pitts*, 619 F.2d 558, 561 (6th Cir. 1980), did not decide whether the district court had judicial power in a civil case to issue a writ outside its territory, and instead focused on the distinct question of whether the district court exercised sound discretion in determining whether or not to transport a prisoner from California to Tennessee. The Court of Appeals concluded that the district court did not abuse its discretion when it denied the writ.

8.

*PLAINTIFF'S OPPOSITION TO EX PARTE APPLICATION TO QUASH*

suggest that Rule 45 somehow limits the courts' judicial power to issue testimonial writs in aid of their jurisdiction.

*Second*, the overwhelming weight of recent authority, including from at least five Courts of Appeal (the Third, Fourth, Fifth, Seventh and Ninth), holds that federal courts have the power to issue writs of habeas corpus *ad testificandum* to federal or state prison officials outside the courts' territorial jurisdiction. *Barnes v. Black*, 544 F.3d 807, 809 (7th Cir. 2008) (Posner, J.) (recognizing that writs of habeas corpus *ad testificandum* "can be used to get a prisoner into the district court from anywhere in the country"); *United States v. Moussaoui*, 382 F.3d 453, 465-66 (4th Cir. 2004) (applying Supreme Court's reasoning in *Carbo v. United States,* 364 U.S. 611 (1961), and finding it "clear that a district court can reach beyond the boundaries of its own district in order to issue a testimonial writ"); *Roe v. Operation Rescue*, 920 F.2d 213, 218 & n.4 (3d Cir. 1990) (recognizing Georgia prisoner's right to petition federal district court in Philadelphia for a writ of habeas corpus to testify at a hearing before that court); *Muhammad v. Warden,* 849 F.2d 107, 114 (4th Cir.1988) (finding *Carbo's* analysis regarding prosecutorial writs applies equally to testimonial writs, and any "remaining doubt about the reach of habeas corpus *ad testificandum* is insubstantial"); *Itel Capital Corp. v. Dennis Mining Supply & Equipment, Inc.*, 651 F.2d 405, 406 (5th Cir. 1981) (adopting the rule that "district courts have the authority to issue writs of habeas corpus *ad testificandum* extraterritorially."); *Stone v. Morris*, 546 F.2d 730, 737 (7th Cir. 1976) (holding that a district court "has the power, although to be exercised with discretion, to compel production of an incarcerated party or witness from anywhere in the country through the use of a writ of habeas corpus *ad testificandum*"); *Maurer v. Pitchess*, 530 F. Supp. 77, 79 (C.D. Cal. 1981), *aff'd in part, rev'd in part*, 755 F.2d 936 (9th Cir. 1985). *See also Thomas v. O'Brien*, 5:08-CV-0318 DEP, 2011 WL 5452012 (N.D.N.Y. Nov. 8, 2011) (recognizing court's authority to issue testimonial writ as

9.

*PLAINTIFF'S OPPOSITION TO EX PARTE APPLICATION TO QUASH*

"well-established, and seemingly non-controversial," including nationwide service of such writs); *Demos v. United States*, 3:10-CV-116, 2010 WL 1995978 (S.D. Ohio Apr. 13, 2010), *report and recommendation adopted*, C-3:10-CV-116, 2010 WL 1995843 (S.D. Ohio May 19, 2010) (following logic of *Moussaoui* and concluding that court had statutory authority to issue testimonial writ in aid of enforcement of its jurisdiction); *Gordon v. Woodring*, C 04-04182 JF, 2005 WL 464636 (N.D. Cal. Feb. 28, 2005) (recognizing the "prevailing view of the federal circuit courts favors the extraterritorial application of a writ of habeas corpus *ad testificandum* in appropriate circumstances"); *Greene v. Prunty*, 938 F. Supp. 637, 638-39 (S.D. Cal. 1996) (same). Indeed, it appears no federal court of appeals has held otherwise.

*Third*, both of the older district court cases cited by Defendants (*Clark* and *Silver*) relied upon a decision in *Edgerly v. Kennelly*, 215 F.2d 420 (7th Cir. 1954), which the Court of Appeals for the Seventh Circuit expressly overruled in *Stone v. Morris, supra*. Moreover, in a prior opinion, this Court recognized *Clark's* authority as "questionable" in light of the Court of Appeals for the Fifth Circuit's subsequent precedent in *Itel Capital, supra*.[4] *Maurer v. Pitchess*, 530 F. Supp. 77, 79 (C.D. Cal. 1981), *aff'd in part, rev'd in part*, 755 F.2d 936 (9th Cir. 1985).

---

[4] *Itel Capital* was decided on July 24, 1981, several months before establishment of the Court of Appeals for the Eleventh Circuit on October 1, 1981, and thus was binding precedent in Georgia upon its issuance. In its first published opinion, the Court of Appeals for the Eleventh Circuit held that decisions handed down by the "former Fifth" prior to October 1, 1981 "shall be binding precedent in the Eleventh Circuit." *Bonner v. City of Prichard, Alabama*, 661 F.2d 1206, 1207 (11th Cir. 1981) (Godbold, C.J.). Consequently, *Itel Capital's* precedent upholding the judicial power of courts to issue writs of habeas corpus *ad testificandum* outside their territorial jurisdiction remains binding precedent in the Eleventh Circuit, implicitly overruling *Clark* on this issue.

In sum, this Court clearly has the power to issue a testimonial writ to secure Ms. Mannarino's testimony at trial if she refuses to obey the deposition subpoena served on her, or to permit a videotaped deposition as a more convenient alternative for all concerned. Ms. Mannarino has made a voluntary choice to be deposed in this case by videotape. Plaintiff has taken extraordinary steps to facilitate through the BOP Ms. Mannarino's videotape deposition on March 6, 2013. There is no basis to undo Ms. Mannarino's decision, on the eve of the close of discovery and after substantial arrangements have been made to take her videotape deposition, based upon false, unsubstantiated claims of coercion which Ms. Mannarino herself has disavowed.

## CONCLUSION

For the reasons set forth above, Defendants' *Ex Parte* Application to Quash Subpoena should be denied.

Respectfully submitted,

DATED: March 3, 2013     LAW OFFICES OF JAMES W. SPERTUS

By:  /S/
    James W. Spertus
    Ezra D. Landes
    1990 S. Bundy Dr., Suite 705
    Los Angeles, CA 90025

    Cyril V. Smith
    William K. Meyer
    Robert T. Shaffer, III
    ZUCKERMAN SPAEDER LLP
    100 East Pratt Street, Suite 2440
    Baltimore, MD 21202
    Telephone: (410) 332-0444
    Facsimile: (410) 659-0436

    [list of counsel continued on next page]

11.

*PLAINTIFF'S OPPOSITION TO EX PARTE APPLICATION TO QUASH*

Richard S. Gordon
Benjamin H. Carney
GORDON & WOLF, CHTD.
102 West Pennsylvania Avenue, Suite 402
Towson, Maryland 21204
Telephone: (410) 825-2300
Facsimile: (410) 825-0066

Edward G. Kramer
THE FAIR HOUSING LAW CLINIC
3214 Prospect Avenue, East
Cleveland, Ohio 44115
Telephone: (216) 431-5300
Facsimile: (216) 431-6149

Attorneys for Plaintiffs