JAMES W. SPERTUS (SBN 159825)
SPERTUS, LANDES & UMHOFER, LLP
1990 S. BUNDY DR., SUITE 705
LOS ANGELES. CA 90025
Tel. No: (310) 826-4700
Fax No: (310) 826-4711
Email: jim@spertuslaw.com

Attorneys for Plaintiff

[Additional counsel on signature page]

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENISE P. EDWARDS, individually and on behalf of all others similarly situated,<br><br>Plaintiff<br><br>v.<br><br>THE FIRST AMERICAN CORPORATION, FIRST AMERICAN TITLE INSURANCE COMPANY,<br><br>Defendants. | CASE CV 07-03796 SJO (FFMX)<br><br>**PLAINTIFF'S SUPPLEMENTAL BRIEF CONCERNING SETTLEMENT ISSUES** |

**I.   THE PROPOSED INCENTIVE FEE IS REASONABLE.**

In this Circuit, a $5,000 incentive award is presumptively reasonable, but courts may enhance that amount if warranted. *Dyer v. Wells Fargo Bank,* 303 F.R.D. 326, 336 (N.D. Cal. 2014) (doubling award to $10,000 to compensate class representatives "for the time and effort they spent in connection with this litigation and the risks they took on behalf of their fellow class members."). A "court must evaluate … awards individually, using relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, ... [and] the amount of time and

effort the plaintiff expended in pursuing the litigation." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).

Here, Denise Edwards has been stalwart in her representation of the Class during ***more than nine years*** of litigation, including assistance with discovery, being deposed, and providing additional declarations when necessary to advance the interest of the class. *See* Dkt. 357-2. Even when Ms. Edwards declared bankruptcy in 2010, she remained fully engaged in this class action, listing it as an asset on her bankruptcy schedules (Dkt. 258 at DA 4508) and testifying in her bankruptcy about her duties as named plaintiff to "represent[] the citizens." *Id.* at DA 4490-91, 4508). Significantly, Ms. Edwards travelled ***at her own expense*** by van from her home in Cleveland to Washington D.C. in November 2011 to attend oral arguments in this case before the United States Supreme Court. Dkt. 378 at 6. This unusual, personal commitment to the case, and to protecting the interests of fellow Class members, warrants an upward adjustment from the presumptively reasonable $5,000 to $10,000.

## II. THE ATTORNEYS' FEES ARE ALSO REASONABLE.[1]

The settlement achieves significant injunctive and monetary relief: (a) renunciation by First American of exclusive referral agreements with 25 title agencies, thus foregoing the benefits derived from $43,000,000 invested in those agreements (Agreement ¶ III.A.7(D)); (b) its agreement not to enter into future prohibited exclusive referral agreements, as defined by the Agreement (*id.* ¶ III.A.7(C); (c) cash payments to Tower City Class members of twice their title insurance charge, or $610,465.96; and (d) cash payments of $75 to Settlement Class members who submit claims. The injunctive relief (items a and b) is

---

[1] This five-page submission was prepared in haste to respond to the Court's briefing request. Class Counsel's Motion for Attorneys' Fees—if its filing is authorized by this Court—will contain additional factual, legal, and other support for the request, including potentially the value of the injunctive relief.

2.

*PLAINTIFF'S SUPPLEMENTAL BRIEF RE SETTLEMENT ISSUES*

significant, because RESPA does not allow private injunctions, and thus Plaintiff will have achieved significant enforcement of RESPA for the benefit of Class members and others. Plaintiff also repeatedly made new law under RESPA which will benefit all consumers.

In the Ninth Circuit, the lodestar method "is appropriate in class actions brought under fee-shifting statutes . . . where the relief sought—and obtained—is often primarily injunctive in nature and thus not easily monetized, but where the legislature has authorized the award of fees to ensure compensation for counsel undertaking socially beneficial litigation." *In re Bluetooth Headset Products Liab. Litig.,* 654 F.3d 935, 941 (9th Cir. 2011), citing *In re Gen. Motors Corp. Products Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995) ("lodestar assures counsel undertaking socially beneficial litigation (as legislatively identified by the statutory fee shifting provision) an adequate fee irrespective of the monetary value of the final relief achieved for the class."). *See Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1029 (9th Cir. 1998) (In "injunctive relief class actions," courts use a lodestar calculation "because there is no way to gauge the net value of the settlement or any percentage thereof")[2]; *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee [which] [n]ormally . . . will encompass [lodestar]").

First American has agreed to pay—**separate from payments to Class members**—the lesser of $5,750,000 ($5,260,000 in fees and $490,000 in expenses), or the amount approved by the Court. *Id*. ¶ III.A(5). This fee-shifting

---

[2] *Hanlon* involved $115 million worth of remedial actions but no cash payments to class members. The Ninth Circuit approved a $5.2 million fee award (4.5% of remedial value), "significantly less than the 25% commonly used" in this Circuit). 150 F.3d at 1029. Here, the requested $5.26 million in fees is 13.3% of the $43 million value of the forsaken exclusive referral agreements, or about half the "commonly used" rate.

3.

*PLAINTIFF'S SUPPLEMENTAL BRIEF RE SETTLEMENT ISSUES*

is authorized by RESPA, 12 U.S.C. § 2607(d)(5). Particularly under the "lodestar" method, the requested fees are reasonable.

### A.     Lodestar Method of Calculating Fees

Here, Class Counsel's lodestar (billed hours times firms' current rates) is $6.4 million, and costs are approximately $490,000.[3] *See* Spertus and Smith Decls. and Exhibit A thereto (billing breakdown). Thus, in a case like this—a "private attorney general" action brought under a fee-shifting statute where counsel is presumptively entitled to lodestar—a fee award of $5,260,000, ***or $1,140,000 (18%) less than lodestar*** is necessarily reasonable.

The fee request is also reasonable because of this case's duration and complexity. The case was filed in June 2007 and has taken many twists and turns, including three appeals to the Ninth Circuit and one to the Supreme Court. The hours expended in such a complex case cannot help but be significant. As this Court observed, First American's defense "has resulted in the expenditure of enormous costs by … class counsel in litigating this matter at every level of the federal judiciary …, as well as thousands of hours of attorney time." Dkt. 378 at 13. In sum, under the preferred lodestar method of calculating fees in a fee-shifting case, the requested amount—to be paid by First American at no cost to Class members—is reasonable.

### B.     Percentage Method of Calculating Fees

This Court directed Plaintiff to "provide the Court with an estimate of the total settlement fund amount." Dkt. 510. Payments differ for members of the Tower City Class (direct payments totaling $610,466) and the Settlement Class (claims-made payments of $75), and the claims-made component makes estimating total payouts difficult. The Settlement Administrator—with

---

[3] Ninth Circuit precedent requires current rates. The rates set forth on Exh. A to the Spertus and Smith Declarations are well within the range of approved rates in this District and in the Supreme Court.

4.

*PLAINTIFF'S SUPPLEMENTAL BRIEF RE SETTLEMENT ISSUES*

experience in this field—reports that response rates vary widely, from 3%-27% where mailed notice is used, to 2% or less where only publication notice (particularly online-only) is used. *See* Bithell Decl. Settlement here involves a hybrid of both notice forms, and applying (a) a 15% rate (midway between 3-27%) to Class members receiving mailed notice (48,000 x .15 x $75 = $540,000); (b) a 2% rate to Class members receiving publication notice (713,000 x .02 x $75 = $1,069,500), with (c) the $610,466 payout to Tower City Class members, results in a total payout estimate of approximately $2.2 million.

Without any consideration of the value of injunctive relief and focusing solely on estimated payout, the $5,260,000 fee request represents a "multiplier" of potential cash payout of approximately 2.3, which is akin to risk multipliers used in common fund cases. *See In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1301 (9th Cir. 1994) (abuse of discretion not to enhance lodestar with risk multiplier where case was "fraught with risk and recovery was far from certain."). A similar analysis can be applied here, especially in light of the injunctive relief achieved.

### III. HOW THE ESCROW ACCOUNT FUNCTIONS.

The Settlement Agreement requires establishment of an escrow account into which funds necessary to implement the settlement (including cash awards to Class Members) will be deposited by First American. Any funds remaining when claim administration is complete revert to First American. Agreement ¶ III.A.6 ("Any interest accrued in the account, or other funds placed in the account, which are not otherwise paid shall be returned to First American.").

5.

*PLAINTIFF'S SUPPLEMENTAL BRIEF RE SETTLEMENT ISSUES*

| | | |
|---|---|---|
| Dated: June 1, 2016 | | SPERTUS LANDES & UMHOFER LLP. |

By: /S James W. Spertus
    James W. Spertus, Esq.

SPERTUS LANDES & UMHOFER LLP
James W. Spertus, Esq.
jim@spertuslaw.com
1990 South Bundy Drive, #705
Los Angeles, CA 90025
(310) 826-4700

ZUCKERMAN SPAEDER LLP
Cyril V. Smith, Esq.
csmith@zuckerman.com
William K. Meyer, Esq.
wmeyer@zuckerman.com
100 East Pratt Street, #2440
Baltimore, MD 21202
(410) 332-0444

Attorneys for Plaintiff
DENISE P. EDWARDS

6.

*PLAINTIFF'S SUPPLEMENTAL BRIEF RE SETTLEMENT ISSUES*