JAMES W. SPERTUS (SBN 159825)
SPERTUS, LANDES & UMHOFER, LLP
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
Tel. No: (310) 826-4700
Fax No: (310) 826-4711
Email: jim@spertuslaw.com

CYRIL V. SMITH (*Pro Hac Vice*)
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, Maryland 21202
Tel. No: (410) 949-1145
Fax No: (410) 659-0436

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENISE P. EDWARDS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs<br><br>v.<br><br>THE FIRST AMERICAN CORPORATION, FIRST AMERICAN TITLE INSURANCE COMPANY,<br><br>Defendants. | CASE NO. CV 07-03796 SJO (FFMX)<br><br>**PLAINTIFF'S MEMORANDUM IN FURTHER SUPPORT OF FINAL APPROVAL OF SETTLEMENT**<br><br>**Date:** **September 19, 2016**<br>**Time:** **10:00 a.m.**<br>**Place:** **Courtroom 1**<br>**Judge:** **Hon. S. James Otero** |

Plaintiff submits this Memorandum in Further Support of Final Approval of Settlement and supporting declarations of Cyril V. Smith, Esq. and Richard Bithell, Esq.

On June 20, 2016, this Court granted preliminary approval of the settlement, underscoring certain issues to be addressed by the hearing on final approval. (Dkt. 517, 23-24) Pursuant to this Court's Order on June 30, 2016 (Dkt. 519), the hearing for final approval of settlement was set for September 19, 2016, at 10:00 a.m., or as soon thereafter as this matter may be heard, in

*MEMORANDUM IN FURTHER SUPPORT OF FINAL APPROVAL*

SPERTUS, LANDES & UMHOFER, LLP
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

1  Courtroom 1 of the above-entitled Court, located at 312 N. Spring Street, Los

2  Angeles, California 90012.

3      On the current state of the record (i.e., no Class members have objected and

4  only a single Class member has opted-out), Defendants do not oppose the relief

5  sought—final approval—but make no representations as to the facts and legal

6  arguments offered in the attached Memorandum of Points and Authorities.

7  Neither the Settlement Agreement, nor this Memorandum in Further Support of

8  Final Approval, nor the fact of a settlement, is an admission or concession by the

9  Defendants of any legal premise or argument, liability, or wrongdoing.

10

11  Dated:  September 9, 2016        Respectfully submitted,

12

13                                  /s/ *James W. Spertus*
                                    _____

14                                  James W. Spertus
                                    Cyril V. Smith

15                                  Attorneys for Plaintiff Denise P. Edwards

16

17

18

19

20

21

22

23

24

25

26

27

28

SPERTUS, LANDES & UMHOFER, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

# TABLE OF CONTENTS

**PAGE**

I.  INTRODUCTION AND SUMMARY OF ARGUMENT ........................... 1

II.  STATEMENT OF FACTS ........................................................ 1

    A.  Class Members Were Given Direct Mailed Notice, As Well As Notice Via Publication And Web Site. ................................ 2

    B.  Only One Class Member Has Opted Out. ............................. 4

    C.  No Class Members Have Objected. ..................................... 4

    D.  No Class Members Have Elected To Appear At The Final Approval Hearing. .......................................................... 5

    E.  First American Has Funded The Escrow Account With More Than $8 Million. ......................................................... 5

    F.  The Settlement Administrator Is Prepared To Issue Checks To Class Members From The Escrow Account. ........................ 5

    G.  CAFA Notice Was Given And No Objections Were Received. ......... 5

III.  DISCUSSION ................................................................... 6

    A.  Class Notice Complied With the Court's Order, Rule 23(c) and (e), and Due Process. ...................................................... 6

    B.  The Settlement is Fair, Reasonable, and Adequate and Warrants Final Approval. ........................................................... 7

        a)  The Strength of Plaintiff's Case. .................................. 9

        b)  The Risk, Expense, Complexity, and Likely Duration of Further Litigation. ............................................. 10

        c)  The Risk of Maintaining Class Action Status Throughout the Trial. .......................................... 11

        d)  The Amount Offered in Settlement. .............................. 12

        e)  The Extent of Discovery Completed, and the Stage of the Proceedings. ................................................. 16

SPERTUS, LANDES & UMHOFER, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA. CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

i.

*MEMORANDUM IN FURTHER SUPPORT OF FINAL APPROVAL*

f)      The Experience and Views of Counsel. ............................. 17

g)      The Presence of a Governmental Participant. ..................... 18

h)      The Reaction of the Class Members to the Proposed
        Settlement. .......................................................................... 18

C.   Plaintiff's Enthusiastic and Active Involvement Warrants a
     Service Award. .................................................................................. 19

IV.   CONCLUSION ............................................................................. 20

SPERTUS, LANDES & UMHOFER, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

*MEMORANDUM IN FURTHER SUPPORT OF FINAL APPROVAL*

5661722.3

**TABLE OF AUTHORITIES**

**PAGE**

**CASES**

*Alberto v. GMRI, Inc.*,
   252 F.R.D. 652 (E.D. Cal. 2008) .................................................................. 20

*Barcia v. Contain-A-Way, Inc.*,
   No. 07cv938-IEG-JMA, 2009 WL 587844 (S.D. Cal. Mar. 6, 2009) ............... 18

*Bezdek v. Vibram USA, Inc.*,
   809 F.3d 78 (1st Cir. 2015) .......................................................................... 13

*Boyd v. Bechtel Corp.*,
   485 F. Supp. 610 (N.D. Cal. 1979) ............................................................... 17

*Carr v. Tadin, Inc.*,
   51 F. Supp. 3d 970 (S.D. Cal. 2014) ............................................................. 13

*Churchill Village, L.L.C. v. General Electric*,
   361 F.3d 566 (9th Cir. 2004) ..................................................................... 9, 18

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ....................................................................... 8

*Curtis-Bauer v. Morgan Stanley & Co.*,
   No. C 06-3903-TEH, 2008 WL 7863877 (N.D. Cal. Oct. 22, 2008) .......... 19, 20

*Edwards v. First American Corp*,
   798 F.3d 1172 (2015) .................................................................................. 14

*Edwards v. First American Corp.*,
   517 F. Supp. 2d 1199 (C.D. Calif. 2007) ....................................................... 14

*Garner v. State Farm Mut. Auto. Ins. Co.*,
   No. CV 08-1365-CW(EMC), 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ... 20

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982) ..................................................................................... 12

iii.

SPERTUS, LANDES & UMHOFER, LLP
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (1998) ...................................................................................... 12

*In re Am. Apparel S'holder Litig.*,
No. CV10-06352 MMM (JCGx), 2014 WL 10212865
(C.D. Cal. July 28, 2014)................................................................ 8, 10, 11, 16

*In re Carter*,
553 F.3d 979 (6th Cir. 2009) .......................................................................... 14

*In re Mego Financial Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ..................................................................... 11, 19

*In re Pacific Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) .............................................................................. 8

*In re Packaged Ice Antitrust Litig.*,
No. 08-MDL-01952, 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) .............. 16

*In re Portal Software, Inc. Sec. Litig.*,
No. C–03–5138 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007)............ 10

*In re Synocor ERISA Litigation*,
516 F.3d 1095 (9th Cir. 2008) .......................................................................... 8

*In re Toys R Us-Delaware, Inc.*,
295 F.R.D. 438 (C.D. Cal. Jan. 17, 2014) .................................................. 17, 18

*Jaffe v. Morgan Stanley & Co.*,
No. C06-3903-TEH, 2008 WL 346417 (N.D. Cal. Feb. 7, 2008)..................... 12

*Kirkorian v. Borelli*,
695 F. Supp. 446 (N.D. Cal. 1988)................................................................... 17

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998) ........................................................................... 9

*Miller v. CEVA Logistics USA, Inc.*,
No. 2:13-cv-01321-TLN-CKD, 2015 WL 4730176
(E.D. Cal. Aug. 10, 2015)................................................................................ 18

iv.

*MEMORANDUM IN FURTHER SUPPORT OF FINAL APPROVAL*

SPERTUS, LANDES & UMHOFER, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

*Nat'l Rural Telecomm. Coop. v. DIRECTV,*
    221 F.R.D. 523 (C.D. Cal. 2004).................................................... 8, 17, 18

*Officers for Justice v. Civil Serv. Comm'n,*
    688 F.2d 615 (9th Cir. 1982) ......................................................... 8, 12

*Perez v. Asurion Corp.,*
    501 F. Supp. 2d 1360 (S.D. Fla. 2007) ............................................. 14

*Petrovic v. Amoco Oil Co.,*
    200 F.3d 1140 (8th Cir. 1999) ........................................................ 13

*Rodriguez v. West Publ'g Corp.,*
    563 F.3d 948 (9th Cir. 2009) ......................................... 7, 8, 9, 12, 18

*Silber v. Mabon,*
    18 F.3d 1449 (9th Cir. 1994) ............................................................ 7

*Spokeo, Inc. v. Robins,*
    136 S. Ct. 1540 (2016)................................................................... 10

*Touhey v. United States,*
    No. EDCV 08-01418-VAP (RCx), 2011 WL 3179036
    (C.D. Cal. July 25, 2011 ............................................................... 16

*Van Bronkhorst v. Safeco Corp.,*
    529 F.2d 943 (9th Cir. 1976) .......................................................... 8

*Van Vranken v. Atl. Richfield Co.,*
    901 F. Supp. 294 (N.D. Cal. 1995) ................................................ 19

*Vasquez v. Coast Valley Roofing, Inc.,*
    266 F.R.D. 482 (E.D. Cal. 2010) .................................................... 11

**STATUTES**

12 U.S.C. § 2601(b)(2)............................................................... 13, 14

12 U.S.C. § 2607(a)....................................................................... 1

28 U.S.C. § 1715(b) ...................................................................... 5

SPERTUS, LANDES & UMHOFER, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

v.

*MEMORANDUM IN FURTHER SUPPORT OF FINAL APPROVAL*

5661722.3

Fed. R. Civ. P. § 23 ................................................................................................. 6

Fed. R. Civ. P. § 23(c)(2)(B) ................................................................................ 6

**OTHER AUTHORITIES**

5 Moore Federal Practice, § 23.85 (Matthew Bender 3d ed.) .................................. 8

SPERTUS, LANDES & UMHOFER, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

vi.

*MEMORANDUM IN FURTHER SUPPORT OF FINAL APPROVAL*

5661722.3

SPERTUS, LANDES & UMHOFER, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

The Class Action Settlement Agreement (Dkt. 506-2) (the "Settlement"), which this Court preliminarily approved in June, will bring a lasting halt to First American's nationwide scheme to increase market share through unlawful referral payments in violation of § 8(a) of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607(a), and is thus a substantial victory for real estate consumers nationwide.  The Settlement will also result in significant financial compensation for both the Tower City Class and the proposed Settlement Class (collectively, the "Class").

The Settlement has also met with widespread approval by the Class:  As of the filing of this Memorandum in Support of Final Approval, *only a single Class member has opted out*, and *not a single Class member has objected* out of the nearly 50,000 Class members who received direct mail notice and countless thousands of other Class members who received publication notice through repeated ads in 20 newspapers nationwide with a combined circulation of more than 2.5 million. This overwhelming support confirms that the Settlement is not only "fair, reasonable, and adequate" under Rule 23(e)(2), but that the Settlement is welcomed by the Class.  This Court should grant final approval.

## II.   STATEMENT OF FACTS

The factual background of this litigation and the Settlement is set forth in Plaintiff's Memorandum in support of her Unopposed Motion for Preliminary Approval of Settlement (Dkt. 506), which this Court granted on June 20, 2016 (Dkt. 517) (the "Preliminary Approval Order").  Below, Plaintiff describes events that have occurred since this Court's preliminary approval.

1.

## A.  Class Members Were Given Direct Mailed Notice, As Well As Notice Via Publication And Web Site.

In the Preliminary Approval Order, this Court approved the appointment of Epiq Class Action & Claims Solutions, Inc. ("Epiq") as Settlement Administrator, to effect notice to the Class and to carry out such other responsibilities as are provided for in the Settlement or may be agreed to by the parties.  (Settlement Agreement ¶ II.D; *see* Preliminary Approval Order 11-12.)  As described in the Declaration of Richard Bithell, Esq., Epiq's Project Manager for this matter (the "Bithell Decl.," attached as Exhibit 1), notice was given to the Class in several different ways, consistent with the Settlement and pursuant to the Preliminary Approval Order:

a) Postcard notice was mailed directly to 437 members of the certified Tower City Class, using names and addresses contained in the Tower City's files.[1]  Only 72 notices were returned as undeliverable, resulting in a mailing success rate of 83.5%.

b) Postcard notice was mailed directly to 47,303 separate addresses of known members of the Settlement Class, using names and addresses compiled by First American, as set forth in the Preliminary Approval Order at 19.[2]  Mailings that were returned as undeliverable were re-

---

[1] Epiq identified and combined one duplicate address record on the Tower City Class list of 450 certified Tower City Class members, resulting in 449 remaining on the initial Tower City Class list.  (Bithell Decl. ¶ 6.)  Of the 449 records, 12 had incomplete mailing addresses, resulting in 437 records on the initial Tower City Class list.  (*Id.* ¶ 7.)

[2] Defendants were able to identify names and addresses of 48,685 members of the Settlement Class using "reasonable efforts."  (Preliminary Approval Order 19.)  Of these, Epiq identified 1,200 as duplicate and combined, resulting in 47,485 records remaining.  (Bithell Decl. ¶ 6.)  Of the 47,485 records, 182 records had incomplete mailing addresses, resulting in 47,303 records on the initial Settlement Class list.  (*Id.* ¶ 7.)

2.

SPERTUS, LANDES & UMHOFER, LLP
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

5661722.3

SPERTUS, LANDES & UMHOFER, LLP
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

1    mailed with updated mailing addresses with only 1,449 notices not

2    being delivered, resulting in a mailing success rate of 96.9%.

3    c) Beginning on July 20, 2016, Epiq caused the Settlement Publication

4       Notice to be published, three separate times, in 20 different

5       newspapers of general circulation in the metropolitan areas where the

6       25 Implicated Title Insurance Agents are located, which newspapers

7       have a combined circulation of 2,503,961.

8    d) Each postcard notice and publication notice contained the address for

9       the Settlement Web site, www.RESPAClassActionSettlement.com.

10   e) The Settlement Web site contained, for viewing and downloading,

11      copies of the Tower City Long Form Notice and the Settlement Class

12      Long Form Notice, as well as (a) copies of the Settlement

13      Agreement, the Preliminary Approval Order, and other important

14      documents; and (b) forms to submit a claim, request exclusion from

15      the Class (i.e., "opt-out"), and to object to the Settlement.

16   (Bithell Decl. ¶¶ 6-12.)

17      Reaction to this Notice has been strong and steady.  As of September 2,

18   2016, the Web site had received 21,244 separate page "hits"—*i.e.*, separate

19   downloads of a Web site page by a user—during 5,425 separate sessions—*i.e.*, the

20   presence of a user with a specific IP address who has not visited the site recently.

21   (Bithell Decl. ¶ 17.)  This high volume of website traffic suggests that many Class

22   members visited the site to learn more about the Settlement.

23      Epic also maintains a telephone call center to disseminate information to

24   Class members via a toll-free number (844-778-5951); and as of September 2,

25   2016, Epiq had received a total of 434 calls on its Interactive Voice Response

26   System, lasting for a total of 2,494 minutes, and another 135 calls answered by

27   live operators lasting for a total of 1,270 minutes.  (Bithell Decl. ¶¶ 14-15.)  Epiq

28

3.

*MEMORANDUM IN FURTHER SUPPORT OF FINAL APPROVAL*

5661722.3

also made 48 outgoing calls, lasting 145 minutes, to respond to caller requests. (*Id.*)

In sum, notice to the Class was "the best notice that is practicable under the circumstances," Rule 23(c)(2)(B), and likely reached (a) all or nearly all members of the Tower City Class via direct mail notice, (b) all or nearly all of the nearly 47,000 known and identified members of the Settlement Class via direct mail notice, and (c) thousands of other members of the Settlement Class  pursuant to extensive and repeated publication notice.

**B.    Only One Class Member Has Opted Out.**

As of September 2, 2016, only one Settlement Class member has opted-out of the proposed Settlement, out of the more than 47,000 Class members who received notice of the proposed Settlement.  (Bithell Decl. ¶ 18 and Exhibit E thereto.)[3]   This is unusual in settlements of class actions of this scope and duration, and indicates widespread approval and acceptance by Class members of the Settlement.

**C.    No Class Members Have Objected.**

Similarly, as of September 2, 2016, not a single member of either Class has objected to the proposed Settlement.  (Bithell Decl. ¶ 19.)[4]   This is also unusual in settlements of class actions of this scope and duration, and is further indication of widespread approval by Class members of the Settlement.  (*Id.*)

---

[3] The deadline for opting out and objecting was August 19, 2016.

[4] Class Counsel received an email from one person objecting to the Settlement, but that person's name does not appear in the lists of either the Tower City or the Settlement Class, and the individual did not respond to Class Counsel's request for verification of Class membership.  (*See id.*)  Thus, it does not appear that this person is a Class Member and his objection is not valid.

4.

*MEMORANDUM IN FURTHER SUPPORT OF FINAL APPROVAL*

SPERTUS, LANDES & UMHOFER, LLP
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

5661722.3

**D.   No Class Members Have Elected To Appear At The Final Approval Hearing.**

As of September 2, no Class members have filed notices of intent to appear at the September 19, 2016 Final Approval Hearing.

**E.   First American Has Funded The Escrow Account With More Than $8 Million.**

On July 1, 2016, First American transferred by wire the sum of $8,120,465.96 to an interest-bearing, federally-insured escrow account, with Epiq as escrow agent.  (Bithell Decl. ¶ 22.)   This money will be used to fund $610,465.96 in payments to Tower City Class members; $1,500,000.00 in potential payments to Settlement Class members; the proposed $10,000.00 Plaintiff's incentive award; the proposed $5,750,000.00 for Class Counsel's fees and costs; and $250,000.00 for potential settlement administration costs.

**F.   The Settlement Administrator Is Prepared To Issue Checks To Class Members From The Escrow Account.**

Epiq has identified (a) 450 members of the Tower City Class who will be paid two times the gross premium, endorsement, and binder charges they paid for their title insurance policies during the Class Period; and (b) 358 Settlement Class members who have so far filed claims and are eligible to receive $75 for each qualified claim.  Epiq will continue to collect and verify Settlement Class claims, through the claim submission deadline of November 18, 2016.[5]  If this Court approves the Settlement, and if that approval becomes final, Epiq will then issue checks directly to Class members.  (*See* Bithell Decl. ¶¶ 20-23.)

**G.   CAFA Notice Was Given And No Objections Were Received.**

On June 22, 2016, counsel for First American notified Epiq and Class Counsel that pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715(b)

---

[5] During the first 44 days after Notice was given, 358 Settlement Class members filed claims.  (Bithell Decl. ¶ 20.)  There are another 77 days remaining until the November 18, 2016 claim submission deadline, so the potential exists for many hundreds of additional claims to be submitted before the deadline.  (*See id.*)

SPERTUS, LANDES & UMHOFER, LLP

1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

5.

1  ("CAFA"), First American provided notice to all 50 states' attorneys general and

2  the Attorney General of the United States more than 90 days before the scheduled

3  September 19, 2016 final approval hearing date, and provided copies of said

4  CAFA notices.  (Bithell Decl. ¶ 24.)  According to counsel for First American, no

5  attorney general has raised any objection to the Settlement.

6  **III.  DISCUSSION**

7      **A.  Class Notice Complied With the Court's Order, Rule 23(c) and**

8          **(e), and Due Process.**

9        The notice program complied with the Preliminary Approval Order and had

10  five components:  (1) notice by mail on March 28, 2013 to the Tower City Class

11  members, informing them of the action, the Court's Tower City Class

12  Certification Order, and their right to opt out; (2) notice by mail on July 20, 2016

13  to the Tower City Class members of the proposed Settlement; (3) notice by mail

14  on July 20, 2016 to the approximately 48,000 known and identified Settlement

15  class members; (4) notice published three separate times beginning in July 2016 in

16  20 different newspapers of general circulation in the metropolitan areas where the

17  25 Implicated Title Insurance Agents are located, with a combined circulation of

18  2,503,961; and (5) the creation and maintenance of a website—

19  www.RESPAClassActionSettlement.com—that contains links to the Agreement

20  and exhibits, the long form notices for the Tower City and Settlement Classes,

21  Claim Form, relevant pleadings and court rulings, and Class Counsel's contact

22  information.  (*See* Bithell Decl. ¶¶ 6-12.)

23        As this Court already found in the Preliminary Approval Order at 17-19,

24  this notice was adequate and satisfied both Federal Rule of Civil Procedure 23 and

25  due process.  The notice to the Class satisfied Rule 23(c)(2)(B)'s certification

26  notice requirement that "the court must direct to class members the best notice that

27  is practicable under the circumstances, including individual notice to all members

28  who can be identified through reasonable effort."  (Fed. R. Civ. P. 23(c)(2)(B).)

SPERTUS, LANDES & UMHOFER, LLP
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

6.

SPERTUS, LANDES & UMHOFER, LLP
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

1  Under Rule 23(e), the court must direct notice in a reasonable manner to all class

2  members who would be bound by the proposal.  Rule 23 requires only that the

3  best notice practicable, rather than actual notice, be provided.  (*Silber v. Mabon*,

4  18 F.3d 1449, 1453 (9th Cir. 1994).)  "Notice is satisfactory if it generally

5  described the terms of the settlement in sufficient detail to alert those with adverse

6  viewpoints to investigate and to come forward and be heard." (*Rodriguez v. West*

7  *Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009) (internal citation omitted).)

8      Nothing has happened since the Preliminary Approval Order to disturb this

9  Court's prior finding of adequate notice.  Epiq reports that it has a mailing success

10  rate of 96.9% for known Settlement Class members, and 83.5% for Tower City

11  Class members.  (Bithell Decl. ¶ 11.)  Publication notice in 20 different

12  newspapers with a combined circulation of more than 2.5 million was made, and

13  repeated three times.  (*Id*. ¶ 12.)  Indeed, the hundreds of calls to Epiq, and the

14  more than 5,400 unique visitors to the Web site since notice was given, indicates

15  that notice was received by Class members, many of whom followed up by

16  visiting the Web site and/or calling Epiq.

17  **B.**  **The Settlement is Fair, Reasonable, and Adequate and Warrants Final Approval.**

19      Rule 23(e) sets forth the procedure and criteria for reviewing the proposed

20  settlement of a class action:

21      (e) Settlement, Voluntary Dismissal, or Compromise. The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

24      (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

26      (2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

7.

*MEMORANDUM IN FURTHER SUPPORT OF FINAL APPROVAL*

5661722.3

Approval under Rule 23(e) "involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted."  (*In re Am. Apparel, Inc. S'holder Litig.*, No. CV10-06352 MMM (JCGx), 2014 WL 10212865, at *5 (C.D. Cal. July 28, 2014); *Nat'l Rural Telecomm. Coop. v. DIRECTV*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).)

In the Ninth Circuit, "voluntary conciliation and settlement are the preferred means of dispute resolution.  This is especially true in complex class action litigation."  (*Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *In re Synocor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) ("[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.").)  Class actions are particularly well suited for compromise due to difficulties of proof, uncertainties of the outcome, and the typical length of the litigation. "[T]here is an overriding public interest in settling and quieting litigation," and "[t]his is particularly true in class action suits."  (*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).)

The standard employed by the Ninth Circuit to determine whether to grant final approval of a class action settlement is "whether the settlement is 'fundamentally fair, adequate, and reasonable.'"  (*Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 525 (quoting 5 Moore Federal Practice, § 23.85 (Matthew Bender 3d ed.) (citing *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 377 (9th Cir. 1995) and *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992), *cert. denied*, 506 U.S. 953, 113 S. Ct. 408 (1992))).)

A settlement agreement, like this one, that is the result of well-informed, arms-length negotiation, is presumed fair.  (*Rodriguez*, 563 F.3d at 965 ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."); *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 528 ("A settlement

8.

*MEMORANDUM IN FURTHER SUPPORT OF FINAL APPROVAL*

SPERTUS, LANDES & UMHOFER, LLP
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

5661722.3

following sufficient discovery and genuine arms-length negotiation is presumed fair.").)  Applying the presumption of fairness, the court will examine the settlement's terms, weighing the following factors:

> (1) the strength of the plaintiff's case;
>
> (2) the risk, expense, complexity, and likely duration of further litigation;
>
> (3) the risk of maintaining class action status throughout the trial;
>
> (4) the amount offered in settlement;
>
> (5) the extent of discovery completed and the stage of the proceedings;
>
> (6) the experience and views of counsel;
>
> (7) the presence of a governmental participant; and
>
> (8) the reaction of the class members to the proposed settlement.

(*Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).)

Here, these factors all weigh strongly in support of final approval, and each factor is discussed below.

### a)    The Strength of Plaintiff's Case.

The first factor, the strength of the plaintiff's case, addresses the plaintiff's likelihood of success on the merits.  (*Rodriguez*, 563 F.3d at 964.)  Here, although the factual basis for Plaintiff's claims was strong, the legal basis for Plaintiff's claims faced substantial litigation risk which currently exists in at least three forms:  (1) First American has a pending motion for summary judgment against the Tower City Class on the "referral" element of a RESPA violation (*See* Dkt. 419); (2) Plaintiff faces obstacles in prevailing on all of the elements of a RESPA § 8(a) violation at trial or summary judgment; and (3) the U.S. Supreme Court has yet to resolve definitively the Article III standing issue that was the subject of the writ of *certiorari* granted in this case in 2011 and dismissed in 2012, i.e., whether

SPERTUS, LANDES & UMHOFER, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

9.

Congress may confer Article III standing upon a plaintiff based on a violation of a federal statute where there is no proof of financial harm.[6]  Indeed, First American filed a petition for writ of *certiorari* from the Ninth Circuit's August 2015 decision in this case, raising this same Article III issue, but agreed to withdraw that petition in connection with the Settlement Agreement.

Given these legal issues, the benefits for both Classes which are achieved by the Settlement are considerable:  (a) an injunction to end First American's challenged practices; (b) double damages for Tower City class members; and (c) $75.00 per claim made for Settlement Class members.  These achievements despite the legal issues facing Plaintiff make the Settlement more than fair, reasonable, and adequate.  (*In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *9 ("[T]he risks [the plaintiff] faced at the summary judgment and trial stages favor a finding that the settlement is fair."); *In re Portal Software, Inc. Sec. Litig.*, No. C–03–5138 VRW, 2007 WL 4171201, *3 (N.D. Cal. Nov. 26, 2007) (finding that the strength of the case weighed in favor of settlement because of the uncertainties the plaintiffs faced in proving their claims).)  Accordingly, this first factor weighs in favor of final approval of Settlement.

### b)   The Risk, Expense, Complexity, and Likely Duration of Further Litigation.

The second factor, the "risk, expense, complexity, and likely duration of further litigation," compares the "significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and

---

[6] On May 16, 2016, the Supreme Court reversed and remanded a case which raised this Article III issue and which had been pending before that Court at the time of the parties executed the Settlement Agreement.  (*See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1550 (2016).)  However, that opinion did not decide the Article III issue.  Instead, the Court remanded the case to the Ninth Circuit for further proceedings.  Thus, the risks to Plaintiff and the Class posed by this Article III issue remain very much alive.

10.

*MEMORANDUM IN FURTHER SUPPORT OF FINAL APPROVAL*

SPERTUS, LANDES & UMHOFER, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

SPERTUS, LANDES & UMHOFER, LLP

1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

expensive litigation." (*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010); *In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).)

Here, Plaintiff faces real obstacles in the continued prosecution of her claims, including but not limited to (1) satisfaction of the remaining class certification issues for the proposed Settlement Class not resolved by the Ninth Circuit in its August 2015 decision (*i.e.*, superiority, adequacy, and ascertainability), all of which First American is vigorously contesting; (2) success on the merits for the proposed Settlement Class, including prevailing over First American's assertion that the "referral" element of a RESPA violation did not exist; and (3) prevailing over First American's likely assertion that the claims of the proposed Settlement Class are subject to arbitration. In addition, as explained above, if this litigation were to continue, Plaintiff faces the non-trivial risk that an adverse Article III decision by the Supreme Court could eliminate entirely all or mostly all of the claims of both the Tower City and Settlement Classes. For these reasons, as this Court noted in its Preliminary Approval Order, in the mediated settlement negotiations "'[b]oth sides . . . carefully and independently considered [the risks associated with continued litigation] with respect to their clients' best interests.'" (Preliminary Approval Order 16-17 (citing Dkt. 506, Ex. A).)

In sum, because there are real and substantial litigation risks which would accompany continued litigation, this factor weighs in favor of final approval.

### c) The Risk of Maintaining Class Action Status Throughout the Trial.

The third factor, "the risk of maintaining class action status throughout the trial," addresses "[w]hether or not the action would have been tried as a class action." (*In re Am. Apparel*, 2014 WL 10212865, at *9.) Where a class has been certified for settlement and there were doubts concerning the viability of the class, or there is a risk that decertification could result from facts adduced through

11.

*MEMORANDUM IN FURTHER SUPPORT OF FINAL APPROVAL*

1   discovery, avoiding those risks favors final approval of settlement.  (*Id.*)

2   Moreover, a district court may decertify a class at any time.  (*See Gen. Tel. Co. of*

3   *Sw. v. Falcon*, 457 U.S. 147, 160, 102 S. Ct. 2364, 2372 (1982).)

4          Here, Plaintiff moved this Court to certify a class on three separate

5   occasions, and was denied certification each time.  Although on appeal the Ninth

6   Circuit ordered certification of the Tower City Class, Defendants continued to

7   adamantly oppose certification of a nationwide class (i.e., the Settlement Class),

8   and there existed the likelihood of continued litigation in this Court and the Ninth

9   Circuit on such nationwide certification, with the outcome uncertain.  (Smith

10  Decl. ¶ 5.)  Nor were these issues resolved by this Court when it granted

11  preliminary approval of the Settlement, because this Court noted that "'confronted

12  with  request for settlement-only class certification, a district court need not

13  inquire whether the case, if tried, would present intractable management problems,

14  for the proposal is that there be no trial.' . . . [T]he remaining factors are not

15  applicable here because the parties have agreed to pre-certification settlement."

16  (Preliminary Approval Order 10.)  Thus, because at the time of settlement, there

17  remained a significant risk that that the nationwide class might not be certified (or

18  even if certified, decertified later), this factor weighs in favor of final approval.

19                **d)**      **The Amount Offered in Settlement.**

20         District courts "put a good deal of stock in the product of an arms-length,

21  non-collusive, negotiated resolution, *Hanlon*, 150 F.3d at 1027; *Officers for*

22  *Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), and have never

23  prescribed a particular formula by which that outcome must be tested."

24  (*Rodriguez*, 563 F.3d at 965-66.)  "The fact that a proposed settlement may only

25  amount to a fraction of the potential recovery does not, in and of itself, mean that

26  the proposed settlement is grossly inadequate and should be disapproved."  (*Jaffe*

27  *v. Morgan Stanley & Co.*, No. C06-3903-TEH, 2008 WL 346417, *9 (N.D. Cal.

28  Feb. 7, 2008) ("The settlement amount could undoubtedly be greater, but it is not

12.

*MEMORANDUM IN FURTHER SUPPORT OF FINAL APPROVAL*

SPERTUS, LANDES & UMHOFER, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

obviously deficient, and a sizeable discount is to be expected in exchange for avoiding the uncertainties, risks, and costs that come with litigating a case to trial.").)

Here, the primarily injunctive relief which the Settlement would provide—not to mention the significant monetary relief—satisfies this factor.  **First**, the Settlement includes injunctive relief, which this Court found to be "significant" and which would not have been achieved outside this Settlement.  (Preliminary Approval Order 17.)  The injunction which Plaintiff obtained through negotiation of the Settlement will achieve what Congress identified as the central purpose of RESPA:  "eliminate[ing] kickbacks or referral fees that tend to increase unnecessarily the costs" of title insurance.  (12 U.S.C. § 2601(b)(2).)

Similar injunctive relief has been found to warrant settlement of other class actions.  (*See Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 84 (1st Cir. 2015) (settlement requiring defendant to discontinue false advertising campaign was "a meaningful concession given that the falsity of the advertising was the central disputed issue in the suit"); *Carr v. Tadin, Inc.*, 51 F. Supp. 3d 970, 976 (S.D. Cal. 2014) (settlement consisting of injunctive relief in the redesigning of the labeling and packaging of products was fair, reasonable, and adequate.)  And where, as here, injunctive relief would almost certainly not be achieved in litigation, the inclusion of injunctive relief in a class action settlement supports a finding that the settlement is "fair, reasonable, and adequate."  (*Petrovic v. Amoco Oil Co.,* 200 F.3d 1140, 1150 (8th Cir. 1999).)

Here, First American has agreed to cease, both for the Implicated Title Agents and on a going-forward basis, its exclusive referral practices challenged in this action, a change which will restore competition to a large segment of the title insurance underwriting market.  That achievement—directly enforcing RESPA's § 8(a) prohibitions—is itself sufficient to justify final approval of the Settlement. After all, RESPA's purpose is to police the market place by prohibiting anti-

13.

*MEMORANDUM IN FURTHER SUPPORT OF FINAL APPROVAL*

SPERTUS, LANDES & UMHOFER, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

1   competitive behavior like First American's Captive Title Insurance Agreements.

2   (*In re Carter*, 553 F.3d 979, 988 (6th Cir. 2009).)  RESPA's statutory damages

3   provision, § 8(d)(2), is simply the method by which that provision is enforced.

4         Quite apart from the injunction's statutory-fulfilling effect, it also raises the

5   likelihood—though not the assurance—of providing substantial economic benefits

6   to consumers nationwide.  That is because, as this Court has observed, RESPA is

7   "a statute that aims to 'eliminat[e] kickbacks and referral fees that tend to increase

8   unnecessarily the costs of certain settlement services.' 12 U.S.C. § 2601(b)(2)."

9   (*Edwards*, 517 F. Supp. 2d 1199, 1201 (C.D. Calif. 2007).)  The Ninth Circuit has

10   concurred.  (*Edwards*, 798 F.3d 1172, 1178 (2015) ("Congress passed RESPA to

11   protect consumers from 'unnecessarily high settlement charges.").)

12         As described in Plaintiff's Motion for Attorneys' Fees (Dkt. 525) at 9-12,

13   studies by Congress, the GAO, and others have demonstrated a close association

14   between kickbacks and the absence of price competition in the title insurance

15   market.  Thus, prohibiting even one large national title insurer (First American)

16   from continuing to use referral fees to establish market share rather than

17   competing on price or service improves the prospects for lower prices throughout

18   the industry, by creating an incentive to compete on price.

19         Although the downward effect on pricing cannot be quantified with

20   precision, there is evidence that effective enforcement of RESPA's anti-kickback

21   rules can reduce title insurance costs substantially.  (*See id*. at 12 (citing HUD-

22   commissioned 1972 Peat Marwick study and 10-23% cost reduction estimate).)

23   And because of First American's large share of this market, any decrease in title

24   insurance rates of this proportion would have large effects.  Even a 10% decrease

25   in rates implies savings for consumers of hundreds of millions of dollars a year.

26   Thus, the injunctive relief achieved by the Settlement has the potential for

27   significant, long-term effects on the title insurance market.  (*See Perez v. Asurion

28   Corp.*, 501 F. Supp. 2d 1360, 1382 (S.D. Fla. 2007) (overruling objections to

14.

*MEMORANDUM IN FURTHER SUPPORT OF FINAL APPROVAL*

settlement's financial terms because the settlement agreement provided "significant injunctive relief that will benefit the over 70 million consumers that lose and/or damage their cell phones each year").)

**Second**, the monetary relief to members of the certified Tower City Class is significant, equal to twice what Class members paid for title insurance, for a total payment by First American of $610,465.96.  Although RESPA provides for treble damages, the double damages agreed to in the Settlement represent a substantial achievement by Plaintiff given the significant risks of continued litigation.

**Third,** the different formulation for monetary relief to the proposed Settlement Class—$75.00 per claim—is driven by the fact that this Court has yet to certify a nationwide class for purchasers of title insurance from the 25 Title Agencies, and has twice refused to do so.  This is a substantial difference between the Tower City Class and the proposed Settlement Class that warrants different treatment.  Moreover, there is no cap on the amount of Settlement Class payments that First American must pay.  (*See* Settlement Agreement § III.A.2 ("There is no cap or limitation on the settlement payments which First American may be required to pay to members of the Settlement Class.").)  As discussed above, Epiq has already received 358 claims in the first 44 days since Notice was given, and there are another 77 days remaining until the November 18, 2016 deadline for claim submission.  Thus, the likelihood is that many additional Settlement Class members will file claims.[7]  In any event, even in a purely monetary settlement, a

---

[7] The Preliminary Approval Order requested additional information about the escrow account and whether "any remaining funds . . . would revert to First American."  (Preliminary Approval Order 22.)  There is no "reverter," because First American is obligated to pay $75.00 for each valid claim.  If the amount that First American has already paid into the escrow account is less than the amount necessary to cover Settlement Class payments, First American will deposit additional amounts to fund those additional required payments.  If the amount that First American has already deposited is more than necessary to cover Settlement Class payments, any overage will be returned to First American.  In this way, First

15.

SPERTUS, LANDES & UMHOFER, LLP

1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

*MEMORANDUM IN FURTHER SUPPORT OF FINAL APPROVAL*

5661722.3

relatively low claim-filing rate should not prevent final approval where other factors weigh strongly in favor of approval, most importantly few opt-outs or objections.  (*See In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188, at *14 (E.D. Mich. Dec. 13, 2011) (settlement approved despite claims filed by only 1% of class where few class members opted-out, there were no objections, and other factors weighed in favor of approval): *Touhey v. United States*, No. EDCV 08-01418-VAP (RCx), 2011 WL 3179036, at *8 (C.D. Cal. July 25, 2011) (settlement approved despite low response rate where there were no opt-outs or objections and other factors favored approval).)  For all of these reasons, a claims-made approach to the proposed Settlement Class, and the payment of $75.00 per approved claim, is fair, adequate and reasonable.

**e)      The Extent of Discovery Completed, and the Stage of the Proceedings.**

The extent of discovery completed "may be relevant in determining the adequacy of the parties' knowledge of the case."  (*In re Am. Apparel, Inc.*, 2014 WL 10212865, at *12 (internal quotation marks and citation omitted).)  Here, Plaintiff's counsel performed an in-depth pre-suit analysis of hundreds of title insurance and loan documents, including interviewing a former First American employee with knowledge of the challenged practice.  After the lawsuit was begun in June 2007, counsel:  (a) reviewed transactional documents related to hundreds of title companies (purchase agreements, agency agreements, internal valuation reports and related financials); (b) deposed some two dozen witnesses located throughout the country; (c) received and reviewed hundreds of thousands of pages of discovery from at least 20 document productions made by Defendant; (d) separately reviewed more than 700 Tower City loan files held in storage in St.

---

American will fund every dollar necessary to pay Settlement Class claims, and no more or no less.

16.

*MEMORANDUM IN FURTHER SUPPORT OF FINAL APPROVAL*

5661722.3

SPERTUS, LANDES & UMHOFER, LLP

1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

SPERTUS, LANDES & UMHOFER, LLP
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA. CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

Louis; and (e) served third party subpoenas on over 126 title companies which required additional review of thousands of pages of internal title agency files. (Smith Decl. ¶ 3.)

The depth of discovery taken in this matter is best demonstrated by the fact that Plaintiff submitted fifteen volumes of evidence to support Plaintiff's renewed motion for class certification in 2011.  (*Id.*)  This extensive discovery provided Class Counsel with more than an adequate basis for understanding the facts of this case and assessing the risks of continued litigation.  Therefore, the parties' knowledge of the case at this stage of the proceedings weighs in favor of approval of the Settlement.

### f)      The Experience and Views of Counsel.

"Significant weight should be attributed to the belief of experienced counsel that the settlement is in the best interest of the Class."  (*See, e.g., Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 528 (noting that "[g]reat weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation"); *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988) (stating that the opinion of experienced counsel is entitled to considerable weight).)  Furthermore, the "recommendations of plaintiffs' counsel should be given a presumption of reasonableness."  (*In re Toys R Us-Delaware, Inc.*, 295 F.R.D. 438, 455 (C.D. Cal. Jan. 17, 2014) (quoting *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)).)

Class Counsel is experienced in complex class action litigation and "has been involved in numerous class action cases in his 30-year legal career."  (*See* Preliminary Approval Order 17.)  Based on his experience in class action litigation and his knowledge of the facts of this case, Class Counsel believes that the Settlement is fair, adequate, and reasonable.  (Smith Decl. ¶ 6.)  This factor weighs in favor of final approval.

17.

*MEMORANDUM IN FURTHER SUPPORT OF FINAL APPROVAL*

5661722.3

g)   **The Presence of a Governmental Participant.**

This factor does not apply because there was no governmental participant in this matter.  To the extent that the views of any governmental agency are relevant, neither the Attorney General of the United States nor any of the 50 attorneys general of the states who received notice of the proposed Settlement pursuant to CAFA has objected to the Settlement.  (*See* Bithell Decl. ¶ 24.)

h)   **The Reaction of the Class Members to the Proposed Settlement.**

To "gauge the reaction of other class members," the court will "evaluate the number of requests for exclusion, as well as the objections submitted.  (*In re Toys R Us-Delaware*, 295 F.R.D. at 455.)  "The absence of a large number of objections to a proposed class action settlement raises a ***strong presumption*** that the terms of a proposed class settlement action are favorable to the class members."  (*Miller v. CEVA Logistics USA, Inc.*, No. 2:13-cv-01321-TLN-CKD, 2015 WL 4730176, *7 (E.D. Cal. Aug. 10, 2015) (emphasis added) (quoting *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 529); *Barcia v. Contain-A-Way, Inc.*, No. 07cv938-IEG-JMA, 2009 WL 587844, at *4 (S.D. Cal. Mar. 6, 2009) (noting that the absence of objectors "strongly supports the fairness, reasonableness, and adequacy of the settlement").)

Here, the Settlement has received overwhelming support—***no objections*** and ***only a single opt-out*** have been received despite more than 47,000 direct mailings and publication notice in newspapers reaching more than 2.5 million readers.  (Bithell Decl. ¶¶ 17-19.)  This overwhelming support by Class members weighs in favor of approval.   (*Churchill Village, LLC*, 361 F.3d at 577 (affirming approval where 45 objections were received and notice was sent to 90,000 members); *Rodriguez*, 563 F.3d at 967 (approving settlement where notice was sent to 376,301 members and fifty-four objections were received).)

*         *         *

18.

*MEMORANDUM IN FURTHER SUPPORT OF FINAL APPROVAL*

SPERTUS, LANDES & UMHOFER, LLP
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

SPERTUS, LANDES & UMHOFER, LLP
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

1    In sum, all of the relevant factors which this Court should consider in

2    evaluating whether the Settlement is fundamentally fair, adequate, and reasonable

3    weigh strongly in favor of final approval.

**C.    Plaintiff's Enthusiastic and Active Involvement Warrants a Service Award.**

6    It is well-settled that a court may grant a service award to a named plaintiff

7    "both as an inducement to participate in the suit and as compensation for time

8    spent in litigation activities, including depositions." (*In re Mego*, 213 F.3d at

9    463.)  A service award rewards the class representative "for the time and effort she

10   devoted to representing the Class in this case." (*Curtis-Bauer v. Morgan Stanley*

11   *& Co.*, No. C 06-3903-TEH, 2008 WL 7863877, at *1 (N.D. Cal. Oct. 22, 2008)

12   (awarding the class representative $25,000, the amount that was "negotiated by

13   the parties and agreed to by Defendant under the terms of the Settlement

14   Agreement," and noting that the plaintiff was an "engaged class representative"

15   who "vigorously represented the Class' interest pursuant to her fiduciary duties").)

16   When determining an appropriate service award, the court may consider the

17   following:  "1) the risk to the class representative in commencing suit, both

18   financial and otherwise; 2) the notoriety and personal difficulties encountered by

19   the class representative; 3) the amount of time and effort spent by the class

20   representative; 4) the duration of the litigation and; 5) the personal benefit (or lack

21   thereof) enjoyed by the class representative as a result of the litigation." (*Van*

22   *Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).)

23   Ms. Edwards has been an enthusiastic and active class representative at

24   every stage of the litigation.  Since the inception of this case in 2007, Ms.

25   Edwards has been in regular contact with Class Counsel to stay apprised of the

26   status of the litigation.  She was deposed in this action, regularly kept abreast of

27   developments, made herself available during work hours for mediation as needed,

28   and even traveled at her own expense by van from Cleveland, Ohio to

19.

*MEMORANDUM IN FURTHER SUPPORT OF FINAL APPROVAL*

5661722.3

SPERTUS, LANDES & UMHOFER, LLP

1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

1  Washington, D.C. in November 2011 to attend oral argument before the Supreme

2  Court in this case.  Notably, when Ms. Edwards lost her home to a fire earlier this

3  month, she contacted Class Counsel to be assured that Class Counsel had a way to

4  continue to reach her although she no longer had a home address or phone

5  number.  (Smith Decl. ¶ 7.)

6       Pursuant to the Settlement and subject to the Court's approval, First

7  American will pay Plaintiff the sum of $10,000 to compensate Ms. Edwards for

8  her service as class representative.  This service award would be approximately

9  six times what Ms. Edwards will otherwise receive in damages (i.e., twice what

10  she paid for title insurance), as follows:

11  | Title Insurance Binder: | $75.00 |
12  | Title Insurance: | $455.43 |
    | Endorsement: | $275.00 |
13  | Total: | $805.43 |

14  | x2: | $1,610.86 |

15  (*See* Exh. B to the Settlement Agreement (Dkt. 506-2), 76 (loan number 603145).)

16       This six-times multiple is considerably less than the 207-times multiple in

17  *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. 2008), referenced by this

18  Court in its Preliminary Approval Order.  Indeed, the proposed $10,000 service

19  award is consistent with, and ***less than***, service awards approved in other class

20  action settlements.  (*See Curtis-Bauer*, *v. Morgan Stanley & Co.*, 2008 WL

21  7863877, at *1(approving a $25,000 fee award); *Garner v. State Farm Mut. Auto.*

22  *Ins. Co.*, No. CV 08-1365-CW(EMC), 2010 WL 1687832, *17 (N.D. Cal. Apr. 22,

23  2010) (approving a $20,000 fee award).)  Given the extensive and continued

24  involvement by Ms. Edwards over the more than nine-year history of this case, a

25  $10,000 service award is warranted.

26  **D.    CONCLUSION**

27       For the reasons stated above, Plaintiff respectfully requests that this Court

28  grant final approval of the settlement agreement.

20.

Dated:  September 9, 2016          SPERTUS LANDES & UMHOFER LLP.


By:   /s/ *James W. Spertus*
　　　James W. Spertus, Esq.


SPERTUS LANDES & UMHOFER LLP
James W. Spertus, Esq.
jim@spertuslaw.com
1990 South Bundy Drive, #705
Los Angeles, CA  90025
(310) 826-4700

ZUCKERMAN SPAEDER LLP
Cyril V. Smith, Esq.
csmith@zuckerman.com
William K. Meyer, Esq.
wmeyer@zuckerman.com
100 East Pratt Street, #2440
Baltimore, MD  21202
(410) 332-0444

Attorneys for Plaintiff
DENISE P. EDWARDS

SPERTUS, LANDES & UMHOFER, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

21.

*MEMORANDUM IN FURTHER SUPPORT OF FINAL APPROVAL*

5661722.3